Dean Justin McKEEVER, Plaintiff,

v.

Thomas ISRAEL, Fred Zurbachen, Joseph Scheradella, Gary Hilt, Defendants.

No. 78–C–427.

United States District Court, E. D. Wisconsin.

Oct. 1, 1979.

Dean J. McKeever, pro se.

Steven D. Ebert, Asst. Atty. Gen., Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

This is a pro se civil case filed by the plaintiff, a prisoner at Waupun State Prison, alleging that the defendants violated his rights under 42 U.S.C. § 1983. The defendants have filed motions to dismiss for lack of jurisdiction, to strike paragraphs 17, 18, 19 and 21 of the plaintiff's complaint and paragraphs 3(a), (b), (c) and 4 of the prayer for relief. The defendants have also filed a motion for costs and attorney's fees. In addition, the plaintiff has filed motions for reconsideration of the Court's denial of appointed counsel, for service by mail and for a preliminary injunction. These motions are the subject of this memorandum and order.

On December 13, 1978, the Court granted the defendants' motion to dismiss the plaintiff's claim regarding alleged limitations on the mail because the plaintiff lacked standing. The Court, however, denied the defendants' motion to dismiss the other claims of the plaintiff regarding the alleged deprivation of personal property.

On April 30, 1979, the Court granted the plaintiff leave to amend his complaint, "but only on the condition that plaintiff consolidates in one document the remaining claim in the original complaint with the claim in the proposed amended complaint." *McKeever v. Israel,* No. 78–C–427 (E.D.Wis. April 30, 1979). The amended complaint referred to by the Court in that order contained only an allegation relating to the defendants' rules regarding mail kept by the plaintiff at the prison. On May 25, 1979, the plaintiff filed his amended complaint which is the basis of the defendants' motions.

DEFENDANTS' MOTION TO DISMISS

The defendants have renewed their motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The defendants' claim that the Court lacks subject matter jurisdiction because the plaintiff has failed to exhaust his state administrative remedies prior to bringing this action. In denying the defendants' motion to dismiss, earlier the Court declined to consider the need for an exhaustion of state administrative remedies in light of the Supreme Court ruling in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1972). There, the court held:

> When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. *Id.* at 405, 94 S.Ct. at 1807.

The defendants now seek to have the Court reconsider its decision in light of the recent decision of the Seventh Circuit in *Secret v. Brierton*, 584 F.2d 823 (7th Cir. 1978).

In *Secret v. Brierton, supra,* the court held that when a prisoner alleges deprivation without due process of law of tangible items of personal property of no great monetary value, he must first utilize state administrative procedures and remedies before filing a § 1983 action. The court's holding was based on a finding that the administrative procedures available to the plaintiff were adequate and that the exhaustion requirement enhanced the likelihood of filtering out frivolous complaints and readily resolvable complaints before they got to court. The court indicated that it believed the procedures would "provide an adequate remedy in many cases, weed out specious claims in some cases, and offer the prisoner an acceptable settlement in others." *Id.* at 828.

In reaching its decision, the court of appeals first reviewed the language of the Supreme Court cases that had indicated that an exhaustion requirement was not required in section 1983 actions. The court distinguished *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), noting that in *Monroe,* the court held that a plaintiff did not have to exhaust *state judicial remedies* before filing a 1983 action. *Id.* at 826. (emphasis added). The court also distinguished *McNeese v. Board of Education,* 373 U.S. 668, 82 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) and *Houghton v. Shafer,* 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). According to the Seventh Circuit, these cases do not establish a general rule that there is no exhaustion requirement in section 1983 actions. Rather, the court held that these cases indicate that any exhaustion remedy must provide a plaintiff with some assurance of getting the relief they request, it cannot be a futile act. *Id.* at 826–829.

The court then considered the cost of requiring a prisoner to exhaust administrative remedies before filing an action in federal court. Recognizing that the delay in proceeding to federal court was the most burdensome drawback to an exhaustion requirement, the court balanced this delay against the proper utilization of judicial time and energy and the particular deprivation involved in the case. The court concluded:

> We confine the applicability of our holding to prisoner § 1983 cases which allege deprivation without due process of law of tangible items of personal property of no great monetary value. The delayed access to federal court resulting from exhaustion is less likely to impose severe burdens on the constitutional rights of prisoners than in other civil rights cases such as those raising liberty interest issues, or property deprivation claims, such as deprivation of legal materials, which might directly reflect upon liberty issues. . . . Although an individual does not lose [sic] all of his constitutional rights upon being imprisoned his rights are clearly circumscribed. . . . There is no constitutional right prohibiting prison officials from confiscating most of a prisoner's personal property pending release from prison. The constitutional violation arises only if they confiscate the property without due process of law. Therefore,

any delay attending the return . . . of property confiscated without due process is necessarily less onerous than a delay in redressing the violation of other rights because of the diminished nature of a prisoner's property rights. *A fortiori* the delay is generally less onerous if the property is not of great monetary value. 584 F.2d at 829–830.

The court also based its decision to require an exhaustion of administrative remedies on "the policy of affording deference to state officials' administration of their prisons." *Id.* at 830.

Turning its attention to the adequacy of the procedure required, the court determined that it must be one that is able speedily to provide the remedy sought and that it is not so unfair as to make utilization of the procedure futile. *Id.* at 831. The court then analyzed the procedure afforded the plaintiff who had alleged his stereo equipment had been damaged. The court found that the procedure of the Illinois Department of Corrections were adequate in light of the deprivation of property alleged by the plaintiff. *Id.* at 831. Among the procedures provided for in the Illinois regulations are an Institutional Inquiry Board which investigates complaints submitted, a right to a hearing before the board, provisions for speedy resolution and a right to appeal the board's decision. *Id.* at 831–832.

The resident complaint procedure established by the Wisconsin Department of Health and Social Services is set out in part in the appendix of this opinion. The procedure provides for the appointment of a Resident Complaint Investigator (RCI) whose primary duty is to investigate the complaints of the residents at the correctional institutions. The residents submit complaints on a form which the RCI must screen within 24 hours. The RCI then investigates the complaint and forwards a written report within 10 days of filing to the superintendent who has four days to decide the matter. If the superintendent fails to act within four days, or if he renders an adverse decision, a resident may

appeal within 10 days to the Corrections Complaint Examiner (CCE). The CCE is a Special Assistant Attorney General who is given the power to investigate and issue subpoenas in aid of his investigations. He may also hold a hearing on a complaint, yet nothing in the regulations requires one. The CCE has 22 days from the filing of the appeal to submit his report and recommendations to the Administrator of the Division of Corrections. The regulations also provide for final departmental review of any decision by the Administrator. An added feature of this procedure is the Complaint Advisory Board consisting of residents and employees of the institution. The resident members are selected by election and the employees are appointed. There is, however, no requirement that a dispute be submitted to this board and they only serve in an advisory capacity.

■ In reviewing these procedures in light of the mandate of the *Brierton* court, the Court finds that these procedures are "capable of providing the remedy sought by the plaintiff" and that the procedure is not so cumbersome and time consuming that it would unduly delay the filing of a section 1983 action in federal court. The Court notes some hesitancy in approving this procedure because it does not provide for a hearing, but due to the diminished property interest that a resident has as well as the limited applicability of this decision, the Court concludes that the safeguards present in this procedure are sufficient to comport with due process. *Secret v. Brierton, supra,* at 829–830.

The plaintiff in this case has alleged that he is being deprived of three items of personal property: a ring worth allegedly $150; an IBM typewriter worth allegedly $950.10; and a pair of Koss Model 6 stereo headphones worth approximately $25. The plaintiff also alleges that another typewriter was damaged by the prison guard costing him $34 to repair. Finally, the plaintiff alleges the guards also confiscated some ball-point pens and erasers. (Plaintiff's complaint, ¶¶ 9, 10, 11, 12 and 13).

■ The record before the Court indicates that the plaintiff did file an inmate complaint form with respect to the ring and received a response from the warden. (Complaint No. WSP 1244–77). It is not clear, however, whether he ever appealed the warden's decision or if he filed any other complaints regarding his other items of property. Therefore, the Court hereby grants the defendants' motion to dismiss paragraphs 9, 10, 11, 12 and 13 of the complaint as well as paragraph 6 of the plaintiff's prayer for relief, all of which concern the confiscation of this property. The Court, however, also grants the plaintiff leave to amend his complaint showing that he has exhausted his administrative remedies as provided in this opinion.

### DEFENDANTS' MOTION TO STRIKE

The defendants have also brought a motion to strike paragraphs 17, 18, 19 and 21 of the plaintiff's complaint and paragraphs 3(a), (b), (c) and 4 of the plaintiff's prayer for relief. The defendants allege that these allegations were not contained in the original proposed amended complaint which the Court approved on April 30, 1979. The paragraphs objected to contain allegations relating to claims of isolation, segregation, corporal punishment and inadequate medical care. Paragraphs 3(a), (b), (c) and 4 of the prayer for relief contain requests for relief pertaining to these complaints including a request to enjoin the defendants. The amended complaint which the Court approved on April 30, 1979 only contained allegations regarding the limitation on the number of pieces of mail that a prisoner may bring into the prison with him upon reentry after a court appearance. This amended complaint was in response to the Court's earlier dismissal of one of the plaintiff's original causes of action because he had lacked standing.

Rule 12(f) of the Federal Rules of Civil Procedure provides that the Court may strike a pleading that contains ". . . redundant, immaterial, impertinent or scandalous matter." The defendants contend that the matters in these provisions of the plaintiff's amended complaint are immaterial to the complaint the Court approved earlier.

■ The Court notes that the plaintiff's amended complaint goes far beyond the Court's earlier order. Therefore, the Court finds that the defendants' motion to strike paragraphs 17, 18, 19 and 21 of the plaintiff's complaint and paragraphs 3(a), (b), (c) and 4 of the plaintiff's prayer for relief must be and is hereby granted.

■ The plaintiff also seeks reconsideration of the Court's order denying the plaintiff appointed counsel and permission to serve his motions by mail. After due consideration, the Court must again deny the plaintiff's request for appointed counsel because it has no funds to pay such counsel.

Rule 5 of the Federal Rules of Civil Procedure also provides for service of process by mail and therefore the plaintiff's motion is moot.

Finally, in his amended complaint the plaintiff has requested a preliminary injunction to enjoin the defendants from confiscating his mail when returning from court appearances and when he is being transferred from prison to prison.

■ To grant a preliminary injunction, four prerequisites must be met: 1) plaintiff must have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; 2) the plaintiff must have a reasonable likelihood of success on the merits; 3) the granting of the injunction will not disserve the public interest; and 4) the possible injury to the plaintiff outweighs the injury the injunction might cause the defendant. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.,* 545 F.2d 1096 (7th Cir. 1976).

The defendants contend the plaintiff has not demonstrated any likelihood of success on the merits and that the defendants have a right to establish rules to limit the property an inmate might keep in his cell. *See Ford v. Schmidt,* 577 F.2d 408, 410 (7th Cir. 1978).

Having carefully considered all the files and documents before the Court, the Court finds that the plaintiff has failed to meet the prerequisites of a preliminary injunc-

tion and therefore, the plaintiff's motion for preliminary relief must be and is hereby denied.

■ The final motion pending in this case is the defendants' motion for costs and attorney's fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and the Civil Rights Attorney's Award Act of 1976, 42 U.S.C. § 1988.

Attorney's fees and costs may be awarded to the prevailing party in the discretion of the court. *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977). At this point in the litigation, the Court believes the defendants' motion is premature and therefore will deny it. Although the defendants' motion to dismiss certain claims has been granted, the Court has also given the plaintiff leave to amend his complaint. In addition, the plaintiff's complaint was not frivolous or unreasonable in light of the status of the law at the time he filed his complaint.

In summary, the Court has today held that when a prisoner seeks redress for alleged deprivations of items of personal property lacking substantial value, he must first exhaust state administrative procedures before filing an action in federal court under 42 U.S.C. § 1983. The Court also approved the administrative procedure adopted by the State of Wisconsin and granted the plaintiff leave to file an amended complaint. The Court has also granted the defendants' motion to strike and denied their request for costs and attorney's fees. In addition, the Court denied the plaintiff's motion for reconsideration and his motion for a preliminary injunction.

SO ORDERED this 1st day of October, 1979, at Milwaukee, Wisconsin.

## APPENDIX

### ADMINISTRATIVE PROCEDURES

State of Wisconsin

Department of Health & Social Services

Division of Corrections

Bureau of Institutions

### RESIDENT COMPLAINTS

The Resident Complaint Review System (RCRS) is designed to facilitate the handling of resident complaints and to provide remedy. It incorporates a multi-step process to ensure appropriate investigation, review appeal and resolution of identified areas of concern.

The Complaint Review System will be publicized at each institution. Appropriate steps will be taken by superintendents to ensure that incoming residents and staff are made aware of the system and its procedures. The residents will be encouraged to seek remedies for their complaints by using this system.

Complaints concerning the finding of guilt or the penalty imposed by an adjustment committee should be forwarded to the superintendent. Such complaints will not be considered by the RCRS. However, you may use the RCRS to challenge the procedures used by an adjustment committee as established in Procedure 3.021, Administration of Discipline.

Entries as to resident's use of the RCRS should not be made in either the chronological recording and/or summaries of the case file. The superintendent at each institution is encouraged to personally review and take action on all complaints filed.

I. *General Provisions*

1.01 All personnel assigned or appointed to duty within the RCRS shall be furnished office space, equipment, supplies and secretarial services necessary for the accomplishment of their responsibilities.

1.02 The Department Secretary or the Administrator of the Division of Corrections may at any time by written order:

a. Dismiss or order held in abeyance any complaint filed in this system which is being litigated in court.

b. Dismiss or order held in abeyance any complaint involving subject matter which he deems appropriate for consideration only by a court or other established and available forum.

 

c. Revise or amend the procedures herein prescribed, except that any revision or amendment proposed by the Administrator shall be delivered forthwith to the Secretary and to such other persons as the Administrator shall direct, and the Secretary shall, within 30 days, affirm, modify or vacate such order.

1.03 Complaint forms and appeal forms shall be freely available in reasonable quantity at all times. No special restrictions shall be placed on residents in segregation or other living units.

1.04 No complaint which challenges or seeks review of the substance of a disciplinary proceeding shall be considered in the RCRS. However, residents may challenge the procedures used by a disciplinary committee. Complaints challenging the sufficiency of the evidence will not be considered unless no evidence of guilt was produced at the hearing. Complaints alleging excessive punishment will not be considered unless the punishment imposed exceeded Division of Corrections' regulations.

1.05 Residents holding a common grievance may file as a group by utilizing the same form and affixing their signatures to that form, or by filing separate forms and indicating they wish the complaint to be considered as part of a common action. When a group complaint or a request to consider a complaint as part of a common action is received, the Resident Complaint Investigator (RCI) shall first determine whether the persons joining in the complaint have a common grievance. If the determination is made that the complainants do not hold a common grievance, the reasons for that determination shall be sent to the complainants in writing.

If the RCI determines that a common grievance does exist, it shall be processed in the usual manner and all complainants informed of the result.

It will be the responsibility of the resident spokesperson to inform the other complainants on group complaints of the result, by routing the disposition to the other complainants, or by other appropriate means.

Anyone of the joining complainants, or anyone adversely affected by the superintendent's decision may appeal the decision as provided by these rules. Acknowledgement of the Request for Review shall be sent to the resident spokesperson who will be responsible for informing the other complainants that the appeal has been acknowledged. The resident spokesperson shall similarly be responsible for informing the complainants on group complaints of the administrator's decision.

1.06 No resident will be disciplined for filing a complaint or otherwise pursuing a remedy in the Complaint Review System.

1.07 If a complainant's affirmed complaint has not been implemented within 22 working days of the decision to affirm at any level, the complainant may directly inform the Corrections Complaint Examiner (CCE) by sealed mail. The CCE shall investigate and take all steps necessary to ensure implementation. The residents shall be informed of this provision on all forms on which they receive decisions.

1.08 Changes affecting the general resident population shall be made known within 10 working days by the superintendent in widely distributed written form. Decisions affecting more than one institution shall be made known by the Bureau of Institutions within 22 working days.

1.09 A copy of these rules shall be given to incoming residents and an adequate verbal explanation of the RCRS given in Assessment and Evaluation. Copies of these rules shall also be provided later upon request.

1.10 The superintendent shall provide the resident population with written in-

formation concerning any modifications of the Resident Complaint Review System within 22 working days following such modifications. Staff shall be briefed on the RCRS at regular intervals.

1.11 Persons working in the RCRS shall respect the confidential nature of the work. Residents may file complaints directly with the CCE in matters related to any breach of confidentiality in the Complaint System. A complainant may make public any aspect of his complaint at any time.

1.12 The Corrections Complaint Examiner shall have administrative supervision of the RCRS and shall monitor the orientation and election processes for compliance with these provisions. The CCE shall coordinate the functions of all personnel assigned thereto.

1.13 The CCE will prescribe adequate record-keeping requirements for all such personnel and will submit quarterly reports to the Attorney General, the Secretary of Health and Social Services and the Administrator of the Division of Corrections.

1.14 The annual progress report of the RCRS shall include a list of complaints which were affirmed, denied or affirmed and not implemented for lack of sufficient funds or other reason. The CCE shall send a copy of the report to the Administrator of the Division of Corrections and to the Secretary of the Department of Health and Social Services and the Attorney General.

1.15 There is no limit to the number of complaints which an individual resident may file. However, when a resident has more than one complaint pending at a time, all but the first will normally be handled on an "as time permits" basis to insure equal access of all residents to the RCRS.

## II. *Institution Level*

2.01 The superintendent at each institution will designate one or more staff members to act as the Resident Complaint Investigator (RCI). The investigation and processing of complaints shall be the RCI's primary duty, taking precedence over all other assignments. The RCI in each institution will be the superintendent's personal representative and will work under the supervision of the superintendent. Superintendents will ensure that the RCI at their institution receives the full cooperation of the institution staff.

2.02 All resident complaints or requests shall be made in writing on complaint forms (Form C–400) which shall be made readily available to all residents. Signed complaint forms will be placed in complaint boxes in the living units or delivered in sealed envelopes to the office of the Resident Complaint Investigator daily. The complaint boxes shall be locked, and only the RCI will have keys to the complaint boxes.

2.03 The RCI shall assign a complaint file number (using the initials of the institution as a prefix) and personally screen all complaints within 24 hours and give priority attention to emergency complaints, e. g., complaints concerning health and personal safety. The RCI shall record the date and time of receipt of each complaint.

2.04 The RCI will investigate and file a written report within 10 working days (using Form C–401) with the superintendent on each complaint received.

2.05 The RCI will employ the investigatory method deemed most suitable to an expeditious and accurate determination. This may include personal interviews, telephone calls, requests for documents, correspondence, etc.

2.06 The RCI's investigatory activities, and the sources of all information relied on, will be reduced to written reports. Where possible and appropriate, the RCI will attempt to dis-

pose of controversies and misunderstandings through mediation. The RCI will forward the complaint and report to the superintendent in all cases, regardless of whether or not the dispute has been adjusted summarily.

2.07 Within four working days of receipt of the RCI report, the superintendent will make a written decision, using Form C–403. This decision shall include the reasons for the decision.

2.08 Copies of the RCI's report and the superintendent's decision will be delivered to the complainant and all other persons affected by the decision. The time and date of delivery to each person will be noted on the original of the superintendent's decision.

2.09 If a complainant does not receive a superintendent's decision as to the complaint within the allotted time, the complaint may be considered by the complainant to be denied and may be immediately appealed.

2.10 A Complaint Advisory Board (CAB) shall be instituted at each adult correctional institution except the Camp System. Complaints may be referred to the CAB for consideration by either the RCI or the superintendent. If a complaint is referred to the CAB, the deadline for reply shall be extended five working days.

2.11 The RCI shall have responsibility for the functioning and election of the Board and shall conduct investigations for the Board.

2.12 The Complaint Advisory Board shall consist of two institution staff members selected by the superintendent and two resident members selected pursuant to Rule 2.13. The election shall be monitored for compliance by the CCE or representatives.

2.13 Elections shall be held at least every 12 months at each facility. Elections shall be the RCI's responsibility.
Notice shall be posted at each facility two weeks prior to each election, describing the process and setting the date. Nominations shall be by housing district, and be closed one week after notice is posted. Written declarations as to candidacy should include a brief biographical statement and reasons for candidacy. No resident shall be denied the opportunity to be a candidate. One week prior to the election date, the names and statements of the candidates should be posted in all the facilities.

On election day, ballots shall be distributed one per resident, including those residents in segregation. No one may take away a ballot from any resident at any time for any reason. On the same date locked ballot boxes shall be used for each housing district. Voting shall be by secret ballot and no one may compel a resident to reveal his or her vote. Only the CCE or his representative shall have keys to the ballot boxes.

Residents may vote for three nominees or write in three nominees from their housing district. Ballots shall be counted by the CCE or representative, and results shall be posted on the day following the election. The person receiving the highest number of votes shall serve on the CAB. In case of a tie vote, the RCI shall meet with the individuals who are tied and write each of their names on an identical slip of paper. These slips of paper will be identically folded, placed in an open container and will be drawn from the container under the supervision of the RCI and in the presence of those receiving identical vote totals. The individual whose name is drawn first shall represent that housing district on the CAB. To enable all elected residents to serve equally on the CAB, the panel shall be composed of the individuals receiving the highest number of votes in each housing district. The panel size shall be six. Since CAB members are intended to serve, two at a time,

for four-month terms, with a staggered rotation every two months, one of the original six members elected shall serve only a two-month term before being replaced. All other panel members shall serve four-month terms.

The order in which the elected individuals shall serve on the CAB will be determined by random selection, using the method described above. That is, the RCI will meet with the six individuals and write each person's name on an identical slip of paper. These slips will be folded identically before being placed in an open container and will be drawn from the container under the supervision of the RCI. The order in which the names are drawn shall determine the order in which the individuals serve on the CAB. The individual whose name is drawn first shall serve the first term, the second shall serve the second term, etc. The individual whose name is drawn second shall serve a two-month term; all others shall serve four-month terms.

2.14 Replacements for any reason shall be made from the panel until it is exhausted. At that time or within 12 months, which ever occurs earlier, elections shall be held. Persons may be reelected to panels.

2.15 The CAB shall hold its first meeting within seven working days of the posting of the election results. At that meeting, to be chaired by the CCE or representative, procedures shall be discussed and a rotating chairperson shall be determined.

III. *Division Review*

3.01 All persons (whether residents or staff) aggrieved by and directly affected by any superintendent's decision will be entitled to appeal from that decision as a matter of right after 10 working days of receipt of a copy of the decision by filing a "Request for Review by Corrections Complaint Examiner" form, C–405.

Appeals submitted after 10 working days must include reasons for the delay and may be accepted at the CCE's discretion. Complainants may respond to the superintendent's justification for denial, utilizing space on the form and additional sheets if necessary. Appeals should be sent in sealed envelopes which may not be opened by prison authorities or employees.

3.02 Participation of the complainant in the appeal process is voluntary and may include a request for an investigation or a hearing by the CCE, or for the CCE to make a recommendation on the basis of the complaint, the superintendent's reply, and the complainant's rebuttal to the superintendent's decision.

3.03 The Request for Review by the Corrections Complaint Examiner will be mailed in a sealed envelope directly by the party appealing to the CCE, who will, within five days, review the institution complaint file and acknowledge filing of the appeal using Form C–406. All complaints will be screened for "emergencies." Acknowledgements of appeals on group complaints will be sent to the designated spokesperson(s) for the group.

3.04 The Corrections Complaint Examiner (CCE) will be a Special Assistant Attorney General appointed by the Attorney General with the advice and approval of both initial and permanent employment as CCE by the Secretary of the Department of Health and Social Services. The CCE shall have power to issue subpoenas and will be given full and free access to residents, staff, physical plant, and records of the Division of Corrections.

3.05 The CCE will review all appeals from superintendent's decisions and will file written findings and proposed recommendations or dispositions with the Administrator of the Division of Corrections.

3.06 Recommendations shall be sent to the Administrator within 22 working days of the filing of the appeal.

3.07 An extension for cause of 10 working days shall be added to the time for review if the CCE shall notify all interested parties that cause exists for extending said time.

3.08 The CCE may use any necessary and appropriate investigatory tool, including but not limited to, evidentiary hearings, interviewing the parties and witnesses, and examining records and documents, which would enable him to make reliable findings in the form of recommendations to the Administrator.

3.09 If an appeal necessitates resolution of disputed issues of fact, the CCE may require the parties to submit their contentions in sworn statements before proceeding to an evidentiary hearing or other mode of investigation.

3.10 If an evidentiary hearing is held, the CCE will personally preside and will in his discretion determine and provide for adequate and timely notice, production of witnesses, representation of parties when necessary, and opportunity for confrontation and cross-examination of witnesses. The CCE shall determine the time and place of hearing, the rules of evidence, and modes of procedure to be observed during the course of the hearing.

3.11 If the CCE holds a hearing, the time limits may be extended by a written agreement of the complainant and the superintendent.

3.12 The CCE may, at his discretion, utilize paid or volunteer independent investigators acting with the full authority of the CCE.

3.13 The CCE may attempt to mediate or conciliate any matter. No agreement or compromise arrived at thereby shall be binding until approved by the Administrator upon the recommendation of the CCE.

3.14 Should the CCE fail to make a recommendation in the prescribed time, the CCE's recommendation should be considered a recommendation to affirm the complaint.

3.15 Upon completion of the review by the CCE, a report shall be reduced to writing in Form C–407. The CCE's report shall be delivered to the Administrator of the Division of Corrections who will note the Division decision within 10 working days, utilizing Form C–408. If the Administrator shall notify all interested parties that cause exists for extending his allotted time, an additional 10 working days shall be allowed.

3.16 If no written decision is made by the Administrator or designee within the above time limit, the findings and recommendations of the Corrections Complaint Examiner may be deemed to be the decision of the Administrator, and the CCE shall so inform the parties involved.

3.17 The CCE may refuse to review questions of law or fact presented upon appeal which were not raised at the institution level.

3.18 The CCE shall make an accurate record of investigative activities and incorporate such record in the complaint file. Testimony received in the course of evidentiary hearings shall be recorded by the CCE. Transcription of the recordings shall be at the discretion of the CCE.

IV. *Departmental Review*

4.01 Any person aggrieved by a decision of the Administrator and directly affected thereby shall be entitled to a review of the Administrator's decision.

4.02 Departmental review shall be initiated by sending a copy of the "Request for Departmental Review" (Form C–409) to the Secretary of the Department. Service may be made by mailing Form C–409 in a sealed envelope to the Secretary, Department of

Health and Social Services, Wilson Street State Office Building, Madison, WI 53702, within 15 days following delivery of the Administrator's decision to the aggrieved party. The Secretary may, in his discretion, make extensions to the time limit for good cause.

4.03 Upon the filing of a Request for Departmental Review the Secretary shall notify the Administrator of the request, and the Administrator will forthwith deliver the entire complaint file to the Secretary. The Secretary will also mail an appropriate acknowledgement of the filing of the Request to the party requesting the review and the CCE.

4.04 The Secretary shall examine the entire complaint file and affirm, reverse or modify the Administrator's action or return the file to the Administrator for additional proceedings specifying the additional investigation desired.

4.05 If the file reviewed includes a challenge to a policy, practice or rule, the Secretary may accept and consider additional information or testimony from any person concerning the purpose, need or validity of a practice, policy or rule. Information or testimony so received may be oral or written. The Secretary may consider as well any publications, treatises, books or other documents which are considered relevant to the policy, practice or rule. The Secretary shall determine the weight to be given any such information, testimony or other publication and shall summarize briefly in the decision the information, testimony or other documents so examined.

4.06 The Secretary shall determine all issues raised by a Request for Departmental Review within 22 working days following receipt of the complaint file.

4.07 Should the Secretary fail to reach a decision in the allotted time, the Administrator's decision shall stand.

4.08 In determining a Departmental Review, the Secretary shall set forth in writing the reasons for the decision. If the action of the Secretary is to affirm the decision of the Administrator, it shall be sufficient to indicate acceptance of the Administrator's decision and reasoning.

4.09 The Secretary's decision shall be promptly delivered to the party requesting review, the Administrator, the CCE and to all other persons affected thereby.

4.10 The term "Secretary" shall include the Deputy Secretary of the Department of Health and Social Services or any other individual from the Secretary's staff as he shall designate to process and decide requests for review.

## APPENDIX TO THE ADMINISTRATIVE PROCEDURES

### RCRS Procedures at the Community-Based Facilities

The RCRS procedures shall be the same at the community-based facilities as at the other correctional institutions, except that both the facility superintendent and the regional chief shall render a written decision on each complaint filed.

The RCI will file a written report with the facility superintendent within six working days. Within four working days, the facility superintendent will make a written decision, using Form C–403. This decision shall include the reasons for the decision, and shall be forwarded to the regional chief.

The regional chief shall make a written decision within four working days of receipt of the superintendent's decision, using Form C–403. This decision shall include the reasons for the decision, and shall be treated as the superintendent's decision for purposes of review.