John A. CASTEEL, a/k/a Tayr Kilaab Al Ghashiyah (Khan), Plaintiff-Appellant,

v.

Victor VAADE and Gregory Grams, Defendants-Respondents.

Supreme Court

*No. 90–0103. Oral argument November 25, 1991.—Decided March 17, 1992.*

(Also reported in 481 N.W.2d 277.)

1

For the plaintiff-appellant there were briefs by *Curry First* and *Legal Aid Society of Milwaukee* and *Gretchen E. Miller* and *American Civil Liberties Union of Wisconsin Foundation,* all of Milwaukee and oral argument by *Mr. First.*

For the defendants-respondents the cause was argued by *Jennifer Sloan Lattis,* assistant general, with whom on the briefs was *Donald J. Hanaway,* attorney general.

Amicus Curiae was filed by *Martha K. Askins,* for the Office of the State Public Defender.

SHIRLEY A. ABRAHAMSON, J. This is an appeal from an order of the Dane County Circuit Court, Michael Nowakowski, Circuit Judge, dismissing the complaint for failure to state a claim upon which relief can be granted because the plaintiff failed to exhaust his administrative remedies under the Inmate Complaint Review System, Wis. Admin. Code sec. DOC 310 (1990), and has an adequate remedy under state law.[1]

---

[1] The circuit court's proceeding and order also addressed other issues in the case. The circuit court granted the defendant's motion to amend the caption to include the name "John Casteel," because the court found no evidence that the plaintiff had legally changed his name. The plaintiff did not argue or brief this issue before this court, but reserved the right to submit a motion and evidence at a future time in this litigation.

While the circuit court record shows that the defendant Vaade was never served with the original summons and complaint, the defendants never raised the issue at the circuit court. The defendants' brief (p. 11) states that the defendants do not contest the circuit court's jurisdiction over Vaade.

The court of appeals certified the appeal to this court pursuant to sec. (Rule) 809.61, Stats. 1989-90, "to determine whether an individual must exhaust administrative remedies before bringing a claim under 42 U.S.C. sec. 1983 in state court." In its written certification order, the court of appeals explained that in *Kramer v. Horton,* 128 Wis. 2d 404, 418, 419, 383 N.W.2d 54 (1986), *cert. denied,* 479 U.S. 918 (1986), this court held that "[w]hen state administrative remedies are adequate and readily available, a plaintiff bringing a sec. 1983 claim in state court should exhaust his administrative remedies prior to commencing suit," but that exhaustion is not required "when the administrative remedies are patently inadequate or are adequate in theory but not in practice due to bias or delay." The court of appeals concluded in its certification order that the vitality of *Kramer* has been called into question by *Felder v. Casey,* 487 U.S. 131, 146-47 (1988) *(Felder II).* In *Felder II* the Supreme Court held that the Wisconsin notice of claim statute is inapplicable to sec. 1983 litigation.

In our order accepting certification we directed the parties to address "the question of whether an individual must exhaust administrative remedies before bringing a claim under 42 U.S.C. sec. 1983 in state court and . . . the impact, if any, of the United States Supreme Court's decision in *Felder v. Casey* . . . on this court's decision in *Kramer v. Horton* . . .."

---

The circuit court also denied several of plaintiff's motions, including the motion to amend the complaint to include habeas corpus relief; the plaintiff does not argue these motions on appeal.

The defendants assert that the plaintiff's failure to allege exhaustion of his administrative remedies and compliance with sec. 893.82 (the notice of claim statute) precludes any state claim as well as his sec. 1983 claim. We do not address any state claim here.

4

Relying on *Felder II*, we conclude that the plaintiff need not exhaust his administrative remedies before bringing this sec. 1983 action in state court. Furthermore, although the federal Civil Rights of Institutionalized Persons Act of 1980 (CRIPA) requires adult prisoners to exhaust state administrative remedies if the remedies provided by the state comply with federal standards, Wisconsin's Inmate Complaint Review System does not on its face comply with these federal standards. We conclude that under these circumstances the plaintiff need not exhaust his state administrative remedies.

We further hold that the plaintiff's complaint may be interpreted as alleging a deprivation of property without due process caused by conduct pursuant to an established state procedure. We therefore remand the cause to the circuit court for further proceedings not inconsistent with this opinion, including allowing the plaintiff to amend his complaint to allege further facts (including those demonstrating the inadequacy of other postdeprivation remedies).

## I.

For purposes of this appeal the facts are not disputed. On May 29, 1989, the plaintiff, John A. Casteel, a/k/a Tayr Kilaab Al Ghashiyah (Khan), filed a *pro se* complaint alleging a civil rights cause of action under 42 U.S.C. sec. 1983.[2] He claimed damages for the alleged

---

[2] 42 U.S.C. Sec. 1983 reads:

**Section 1983. Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

deprivation of his property without due process of law in violation of the Fifth and Fourteenth Amendments of the United States Constitution. The plaintiff claims that the defendants, officials of the Waupun Correctional Institution, received through the mail a negotiable instrument that Reverend David E. Mrotek issued payable to the plaintiff. The complaint asserts that the defendants acknowledged receipt of the instrument but failed to credit the amount of the instrument to the plaintiff's inmate account as required by statute. In addition, according to the complaint, the defendants refused the plaintiff's request to forward the instrument to the plaintiff's attorney. The complaint does not allege that the plaintiff used the inmate complaint review system available to inmates at the Waupun Correctional Institution. The defendants moved to dismiss the complaint.

The circuit court relied on two independent grounds to dismiss the complaint for failure to state a claim. First, applying *Kramer v. Horton,* 128 Wis. 2d 404, 383 N.W.2d 54, *cert. denied,* 479 U.S. 918 (1986), the circuit court ruled that the plaintiff must exhaust his state administrative remedies before bringing a sec. 1983 action in a Wisconsin circuit court. Second, the circuit court concluded that state law provides an adequate postdeprivation remedy for the plaintiff in the form of a common law conversion or negligence action and therefore state law satisfies the plaintiff's Fourteenth Amendment due process rights.

---

action at law, suit in equity, or other proper proceeding for redress.
. . .

## II.

The first issue we address is whether the plaintiff must exhaust his state administrative remedies before bringing a sec. 1983 action in state court. To answer this question we first analyze several decisions of the United States Supreme Court and of this court. If we determine that the general rule is "no exhaustion," we then must determine whether Congress, through the Civil Rights of Institutionalized Persons Act (CRIPA), has required the plaintiff in this case to exhaust the administrative remedies available under the Wisconsin Inmate Complaint Review System.

We begin our analysis with *Patsy v. Board of Regents of the State of Florida,* 457 U.S. 496 (1982). In *Patsy* the Supreme Court reaffirmed numerous cases decided over the preceding 20 years in which the Court concluded that exhaustion of state administrative remedies was not a prerequisite to bringing a sec. 1983 action in federal court. While *Patsy* involved a sec. 1983 action begun in federal district court, not in state court, the United States Supreme Court laid the basis in *Patsy* for denying state courts the power to impose an exhaustion requirement in sec. 1983 actions.

Writing for the majority, Justice Thurgood Marshall relied on the legislative history of the Civil Rights Act of 1871, the precursor of sec. 1983. Members of the 1871 Congress did not expressly discuss the exhaustion issue, but the debates strongly suggest Congress's intent was not to require exhaustion of state administrative remedies. 457 U.S. at 503. Congress wished to place the primary responsibility for protecting civil rights in the federal courts and to provide injured parties with immediate access to the federal courts notwithstanding state law requirements. 457 U.S. at 503-04. The debates also

7

reveal a mistrust of state factfinding processes which often receive deference when courts review administrative remedies. 457 U.S. at 506. Finally, Congress conceived of the federal system as a forum for civil rights remedies concurrent with and independent of state systems. 457 U.S. at 506–07.

Justice Marshall also scrutinized in *Patsy* the legislative history of the more recently enacted Civil Rights of Institutionalized Persons Act of 1980 (CRIPA).[3] In CRIPA, Congress enacted a limited exhaustion requirement for adult inmates asserting sec. 1983 claims.[4] While debating the Act, several members of Congress recognized that generally exhaustion of state administrative remedies is not required in sec. 1983 suits. 457 U.S. at 509-10 (citations omitted). The Court concluded that Congress carefully carved out in CRIPA a limited exception to the general rule of "no exhaustion," in part to encourage states to adopt appropriate grievance procedures for adult inmates. 457 U.S. at 509. In carving out this exception, according to the *Patsy* decision, Congress implicitly preserved the general rule of "no exhaustion" in sec. 1983 suits that do not fall under CRIPA. 457 U.S. at 509.[5]

This court interpreted *Patsy* in *Kramer v. Horton,* 128 Wis. 2d 404, 417, 383 N.W.2d 54, *cert. denied,* 479 U.S. 918 (1986). This court concluded in *Kramer* that *Patsy* did not govern sec. 1983 actions brought in state courts. The *Kramer* court dismissed a sec. 1983 claim

---

[3] Pub. L. No. 96-247, 94 Stat. 349 (1980) (codified as amended at 42 U.S.C. Sections 1997–1997j (1988)).

[4] 42 U.S.C. Sec. 1997e.

[5] The *Patsy* court also concluded that the policy considerations justifying an exhaustion requirement would be outweighed by the difficulties of courts' designing a rule for exhaustion. 457 U.S. at 513-15.

brought in our state court because the complainant failed to exhaust his state administrative remedies. The general rule, according to *Kramer,* is that exhaustion of administrative remedies is required "[a]bsent evidence that the administrative reviewing agency is inherently biased, or that the agency is unable or unwilling to hear the claim, or that the agency is delaying review unnecessarily . . .." 128 Wis. 2d at 420.

The *Kramer* court reasoned that the federal Constitution reserves to the state legislatures and state courts the power to design the procedural scheme under which claims may be heard in state court. The court concluded that "[c]onsiderations of comity and federalism dictate that a state court faced with a sec. 1983 claim must weigh different interests than a federal court when deciding whether to apply the exhaustion doctrine." 128 Wis. 2d at 417 (citing U.S. Const. Amend. X).[6] The interests that led the *Kramer* court to uphold the exhaustion requirement when a sec. 1983 claim is brought in state court included judicial efficiency, the ability of administrative bodies to clarify issues, and Wisconsin's traditional confidence in its administrative procedures. 128 Wis. 2d at 418. Furthermore, wrote the court, the complainant in *Kramer* could have brought his claim in federal court if he wished to avoid the requirements of exhaustion of state administrative remedies. 128 Wis. 2d at 419.

---

[6]The court concluded that the Tenth Amendment reserved to the states "the power to prescribe the procedural scheme under which the [federal] claims may be heard in state court." The Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. X.

In sum, the *Kramer* court adopted a flexible approach to determine when state courts may require exhaustion of state administrative remedies in sec. 1983 actions. Exhaustion may be required when the state administrative remedies are adequate and readily available. 128 Wis. 2d at 418–19.

This court followed the reasoning of *Kramer* the following year in *Felder v. Casey (Felder I),* 139 Wis. 2d 614, 408 N.W.2d 19 (1987). The court held in *Felder I* that a plaintiff in a section 1983 case brought in state court must comply with the state's notice of claim statute, sec. 893.80(1), Stats. Under the notice of claim statute, parties bringing actions against governmental officers must serve written notice on the officers within 120 days of the event giving rise to the claim and may not commence suit within the 120 days following the serving of notice. Failure to comply with the statute constitutes grounds for dismissal of the action.

This court reasoned in *Felder I* that "a state may impose procedural requirements on litigants choosing a state forum for adjudication of their federal civil rights claims." 139 Wis. 2d at 627. We stated that "litigants who choose to press their claims in state court cannot 'elect' to ignore state procedural rules." *Id.* "The right to sue in state court is accompanied by the corollary duty to abide by certain rules and procedures." *Id.* Our holding requiring compliance with the notice of claim statute vindicates, according to the majority in *Felder I,* the state's interest in allowing governmental officers the opportunity of negotiating a settlement before undergoing the cost and effort of a lawsuit. 139 Wis. 2d at 624.

Although it acknowledged our court's analysis of the legitimate state interests in requiring compliance with the notice of claim statute, the United States Supreme Court reversed our *Felder I* decision. *Felder v. Casey*

*(Felder II)*, 487 U.S. 131 (1988). Writing for a 7-2 majority,[7] Justice William Brennan concluded that the Wisconsin notice of claim statute is "pre-empted as inconsistent with federal law," 487 U.S. at 134, because it "conflicts both in purpose and effects with the remedial objectives of sec. 1983, and because its enforcement . . . will frequently and predictably produce different outcomes in sec. 1983 litigation based solely on whether the claim is asserted in state or federal court . . . ." 487 U.S. at 138.

Justice Brennan reasoned as follows: When assessing the applicability of a state law to federal civil rights litigation the Court must look to "the purpose and nature of the federal right." 487 U.S. at 139. The Wisconsin notice of claim statute undermines the uniquely federal remedy under sec. 1983 in three distinct ways. First, the notice of claim statute conditions the federal remedy in order to minimize governmental liability, a purpose manifestly inconsistent with the purposes of sec. 1983. The notice of claim statute is not a neutral and uniformly applied rule of procedure; it is a substantive burden imposed only on those who seek redress for injuries resulting from misuse of government authority. 487 U.S. at 141-45. Second, the notice of claim statute discriminates against the federal right by allowing non-civil rights litigants a two year statute of limitations for intentional torts while imposing a 120-day limitation period on civil rights victims. 487 U.S. at 141-42, 145-46. Third, the notice of claim statute operates in part as an exhaustion requirement forcing claimants to seek satisfaction first from the government defendant. 487 U.S. at 142, 146-47, 149.[8]

---

[7]Justice White concurred in the mandate but not in the opinion. Justice O'Connor and Chief Justice Rehnquist dissented.

[8]Justice Brennan characterized the notice of claim statute as

11

The *Felder II* opinion very strongly, convincingly, and clearly asserts that a state court may not impose an exhaustion requirement in a sec. 1983 action. The Court insisted that civil rights actions *"belong in court. . . . They are judicially enforceable in the first instance."* 487 U.S. at 148 (emphasis added) (quoting *Burnett v. Grattan,* 468 U.S. 42, 50 (1984)).

The Supreme Court emphatically rejected in *Felder II* the argument that it should permit the exhaustion requirement imposed by the notice of claim statute because the requirement does not result in undue cost or delay to the complainant. Justice Brennan concluded that while a state administrative dispute resolution system may have much to commend it, it is inconsistent with the broad remedial purposes of sec. 1983 to require civil rights victims to seek compensation from the offending state government officers before asserting a federal action in state court. 487 U.S. at 148-50.[9] The

an exhaustion requirement several times in his opinion. The two dissenting justices similarly characterized the notice of claim statute as imposing a limited exhaustion of remedies requirement. 487 U.S. at 157 (O'Connor, J., dissenting).

This court in *Felder I* and Justice White's concurring opinion in *Felder II,* 487 U.S. at 153-156 (White, J., concurring), characterized the notice of claim statute as a statute of limitations.

[9]Justice Brennan wrote:

While the exhaustion required by Wisconsin's notice-of-claim statute does not involve lengthy or expensive administrative proceedings, it forces injured persons to seek satisfaction from those alleged to have caused the injury in the first place. Such a dispute resolution system may have much to commend it, but that is a judgment the current Congress must make, for we think it plain that the Congress which enacted sec. 1983 over 100 years ago would have rejected as utterly inconsistent with the remedial purposes of its broad statute the notion that a

Court concluded that state policy considerations cannot justify a judicially imposed exhaustion requirement unless exhaustion is consistent with Congressional intent. 487 U.S. at 149–50.

Citing *Patsy* the Court found evidence in the legislative history of sec. 1983 that Congress did not intend to require exhaustion in sec. 1983 litigation. The Court also found Congressional intent in the legislative history of CRIPA described earlier in *Patsy*. The Court concluded that those deliberations establish Congress's intent to eliminate the exhaustion requirement in all sec. 1983 cases except those explicitly exempted by statute. *Felder II,* 487 U.S. at 148–49 (citing *Patsy,* 457 U.S. at 508–12).

The Court completed its analysis in *Felder II* by rejecting the argument that a federal cause of action takes the state courts as it finds them. "Federal law takes state courts as it finds them only insofar as those courts impose rules that do not 'impose unnecessary burdens upon rights of recovery authorized by federal laws.' " 487 U.S. at 150 (quoting *Brown v. Western Ry. Co. of Alabama,* 338 U.S. 294, 298–99 (1949)). The Court concluded that Congress desired, and was able to impose this desire on the states through the Supremacy Clause, that state and federal courts within a state apply the federal civil rights laws uniformly. 487 U.S. at 152–53 (citing *Wilson v. Garcia,* 471 U.S. 261, 274–75 (1985)). The Court stated that "a law that predictably alters the outcome of Section 1983 claims depending solely on whether they are brought in state or federal court within the same state is obviously inconsistent with this federal interest in intrastate uniformity." 487 U.S. at 153.

---

State could require civil rights victims to seek compensation from offending state officials before they could assert a federal action in state court. 487 U.S. at 149.

The holding in *Felder II* is as follows: A state court may not require a complainant to exhaust state administrative remedies before bringing a sec. 1983 action in state court unless the complainant falls under a clear exception to the "no exhaustion" rule adopted by the United States Congress.

Courts in several other states have similarly interpreted *Felder II* as preventing state courts from requiring the exhaustion of state administrative remedies in sec. 1983 actions in state courts.[10] Our reading of *Felder II* is consistent with the United States Supreme Court's and our court's explications of the case.

The United States Supreme Court has reaffirmed *Felder II,* as eliminating the exhaustion requirement, writing: "In *Felder v. Casey,* we . . . held that a Wisconsin notice-of-claim statute that effectively shortened the statute of limitations *and imposed an exhaustion requirement* on claims against public agencies and employees was pre-empted insofar as it was applied to 1983 actions." *Howlett v. Rose,* 110 S. Ct. 2430, 2443 (1990) (emphasis added).

We commented on *Felder II* within the last year in *Hogan v. Musolf,* 163 Wis. 2d 1, 471 N.W.2d 216 (1991),

---

[10]For post-*Felder II* decisions interpreting *Felder II* as rejecting the requirement of exhaustion of state administrative remedies in sec. 1983 actions in state court, *see, e.g., Diedrich v. City of Ketchikian,* 805 P.2d 362, 368–69 (Alaska 1991); *Zeigler v. Kirschner,* 781 P.2d 54, 59–60 (Ariz. App. 1989); *Arkansas State Medical Bd. v. Leipzig,* 770 S.W.2d 661, 662 (Ark. 1989); *Patel v. Thomas,* 793 P.2d 632, 635 (Colo. App. 1990); *Miller v. District of Columbia,* 587 A.2d 213, 215 (D.C. App. 1991); *Allen v. Bergman,* 400 S.E.2d 347, 348–49 (Ga. App. 1990); *Brumage v. Woodsmall,* 444 N.W.2d 68, 70 (Iowa 1989); *Blackwell v. City of St. Louis,* 778 S.W.2d 711, 714 (Mo. App. 1989), *cert. denied,* 494 U.S. 1067 (1990).

*cert. denied,* 112 S. Ct. 867 (1992), involving retired federal employees' sec. 1983 action in state court for violation of their federal right to be free from discriminatory state income taxes. This court explained the Supreme Court's *Felder II* decision as establishing "as a general rule that the states cannot impose an exhaustion requirement" on complainants who bring a sec. 1983 action in state court. 163 Wis. 2d at 13; see also 163 Wis. 2d at 18. We recognized that according to *Felder II* sec. 1983 affords citizens a unique remedy, that "policy considerations alone do not justify the imposition of an exhaustion requirement[,] and that such requirements are only appropriate if exhaustion is consistent with congressional intent." 163 Wis. 2d at 13. *Hogan* does not refer to this court's pre-*Felder II* decisions applying exhaustion requirements.

*Hogan* applied the rule that the outcome of a sec. 1983 claim should not depend solely on whether it is brought in state or federal court within the same state. The court concluded that because federal retirees bringing their sec. 1983 actions in federal court would, under the federal Tax Injunction Act of 1937, be required to exhaust their state administrative remedies, they must exhaust their remedies before bringing their action in state court. *Hogan,* 163 Wis. 2d at 14–19.[11]

Despite the clear language of the United States Supreme Court in *Felder II* and our language in *Hogan,* the defendants attempt to distinguish the exhaustion requirement at issue in this case from that in issue in *Felder II*. They argue that if the court imposes an exhaustion requirement in this case, the court would not contravene any federal policy that concerned the United States Supreme Court in *Felder II*. According to the

[11]*Accord Nutbrown v. Munn,* 811 P.2d 131 (Or. 1991), *cert. denied,* 112 S. Ct. 867 (1992).

15

defendants, unlike the notice of claim requirement in *Felder II,* Wisconsin's Inmate Complaint Review System (1) applies to state and federal law claims in the same way, (2) does not limit or condition the liability of governmental officers, and (3) does not bar a complainant from asserting federal civil rights claims in court. The defendants contend that in contrast to the notice of claim statute, which is absolute without any exceptions, the state administrative procedures in this case (and in the *Kramer* case) may be avoided for cause. In sum, the defendants argue that the Inmate Complaint Review System is a simple prerequisite that provides a state administrative body an opportunity to rectify mistakes and develop a record for judicial review.

Assuming arguendo that the defendants' distinctions between the notice of claim statute and the Inmate Complaint Review System are correct,[12] these distinctions are insufficient grounds to conclude that *Felder II* does not govern this case.

The defendants assert that our *Kramer* decision can be reconciled with *Felder II.* The defendants are asking us to "continue to maintain the flexible exhaustion requirement of *Kramer.*" (Reply Brief p. 3.) The court held in *Kramer,* as we explained previously, that complainants may gain immediate access to state court if

---

[12]The amicus curiae brief of the State Public Defender argues that the Wisconsin Inmate Complaint Review System operates as an extremely short statute of limitations even more drastic than the 120-day limit of the notice of claim statute. An inmate's complaint must be filed within 14 calendar days after the occurrence giving rise to the complaint. The inmate has, according to the Public Defender, five days to appeal the decision to the Corrections Complaint Examiner. Complaints and appeals may, according to the amicus curiae brief, be accepted late within the discretion of the inmate complaint investigator.

they can show that "the administrative remedies are patently inadequate, or are inadequate in theory but not in practice due to bias or delay." *Kramer,* 128 Wis. 2d at 418.

We cannot accept the defendants' position, because it is contrary to the rationale which the Supreme Court adopted in *Patsy* and in *Felder II.* In *Patsy,* the Supreme Court reversed an *en banc* decision of the Court of Appeals for the Fifth Circuit which had upheld a "flexible" exhaustion rule like the one the defendants propose. 457 U.S. at 459 (citing *Patsy v. Florida Int'l Univ.,* 634 F.2d 900, 908 (5th Cir. 1981) (en banc)).[13] In *Patsy,* the Supreme Court affirmed its previous decisions that "stated categorically that exhaustion is not a prerequisite to an action under section 1983." *Patsy,* 457 U.S. at 500-01.

In *Felder II* the Supreme Court extended the *Patsy* rule governing sec. 1983 actions in federal court to sec. 1983 actions in state court. The Court confirmed in *Felder II* that the rejection of exhaustion requirements was not based on the nature of the particular exhaustion requirement at issue, but on a Congressional mandate.

We conclude that *Felder II* requires that we withdraw our discussion in *Kramer* concluding that state courts may require exhaustion of state administrative remedies as a prerequisite to sec. 1983 actions brought in state court. See 128 Wis. 2d at 419.

---

[13]The Fifth Circuit panel had allowed an exhaustion requirement if the review system: (1) was orderly, (2) could provide relief more or less commensurate to the claim, (3) was available within a reasonable period of time, (4) was fair and not burdensome or harassing, and (5) included the possibility of interim relief to prevent irreparable harm to plaintiffs. *Patsy,* 457 U.S. at 499 (citing 634 F.2d at 912-13).

Even though state courts may not impose a general exhaustion requirement on sec. 1983 complainants in state courts, the federal Civil Rights of Institutionalized Persons Act (CRIPA) expressly creates an exhaustion requirement for sec. 1983 adult inmate complainants. According to 42 U.S.C. sec. 1997e, the court shall require, if it believes that such requirement would be appropriate, that adult inmates exhaust "plain, speedy, and effective administrative remedies," if the United States Attorney General or the court determines that these remedies are in substantial compliance with the minimum standards promulgated by the United States Attorney General. 42 U.S.C. sec. 1997e(a).[14]

The parties dispute whether sec. 1997e governs sec. 1983 actions brought in state courts. The plaintiff argues that sec. 1997e controls sec. 1983 actions brought in state courts; the defendant argues it does not. The parties agree, however, that the United States Attorney General has not certified Wisconsin's Inmate Complaint Review System and that the Wisconsin Review System does not, on its face, appear to comply substantially with the federal regulations because it does not give inmates

---

[14]The relevant section of 42 U.S.C. sec. 1997e provides in full:

(a)(1)    Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period of not to exceed ninety days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

(2)    The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection (b) of this section.

an advisory role in the disposition of grievances or in the overall operation of the grievance system.[15] The Seventh Circuit Court of Appeals has concluded that Wisconsin's inmate grievance procedure does not, on its face, substantially comply with the federal standards and that no evidence of practices in the institutions was introduced to overcome the facial defect of the Review System. *Lewis v. Meyer,* 815 F.2d 43, 46 (7th Cir. 1987).[16]

We agree with the Seventh Circuit Court of Appeals and the parties that the state Inmate Complaint Review System does not, on its face, comply with the federal standards.

---

[15]28 C.F.R. sec. 40.7(b) states:

(b) *Inmate and employee participation.* The institution shall provide a role for employees and inmates in the operation of the system in such a manner as to promote the credibility of the grievance procedure. At a minimum, some employees and inmates shall be permitted to participate in an advisory capacity in the disposition of grievances challenging general policy and practices and to review the effectiveness and credibility of the grievance procedure. . . .

[16]Wisconsin applied for certification on Nov. 9, 1984. Note, *Resolving Prisoners' Grievances Out of Court: 42 U.S.C. 1997e,* 104 Harv. L. Rev. 1309, 1321 & nn. 61, 62 (1991). State officials provided supplementary information on July 2, 1986. *Id.* They did not receive a response. *Id.* See also D.P. Lay, *Exhaustion of Grievance Procedures for State Prisoners Under Section 1997e of the Civil Rights Act,* 71 Iowa L. Rev. 935, 942 (1986).

The United States Attorney General has not acted on Wisconsin's plan. Report of the Federal Courts Study Committee at 51 (April 1990) (citing dissenting statement of Congressman Kastenmeier).

For discussions of CRIPA, see S. Steinglass, *Section 1983 Litigation in State Courts,* sec. 17.4 (a) (1990), and D.P. Lay, *Exhaustion of Grievance Procedures for State Prisoners Under Sec. 1997e of the Civil Rights Act,* 71 Iowa L. Rev. 935 (1986).

The defendants contend that because CRIPA does not explicitly apply to state courts, Congress has left it to the state courts to establish their own minimum standards for inmate grievance procedures which must be exhausted before a sec. 1983 claim can be brought in state court. We do not find the defendants' position persuasive under the reasoning adopted by the United States Supreme Court in *Felder II*.

In CRIPA, Congress enacted a limited exception to the general rule that sec. 1983 litigants need not exhaust state inmate grievance procedures. Congress enacted CRIPA partly to encourage states to adopt appropriate grievance procedures. *Patsy*, 457 U.S. at 509; 1980 U.S. Code Cong. and Admin. News 787, 816. We conclude that reading CRIPA as permitting a state to require exhaustion of state inmate grievance procedures which do not comply with federal standards subverts Congress's policy of encouraging states to adopt adequate state inmate grievance procedures. We conclude that Congress has not permitted an exception to the "no exhaustion" rule when the state's inmate grievance procedure does not comply with federal standards. Accordingly we conclude that the plaintiff need not exhaust his remedies under the Inmate Complaint Review System.[17]

Because we conclude that *Felder II* prohibits state courts from requiring complainants in sec. 1983 actions to exhaust administrative remedies unless Congress otherwise provides and that the Wisconsin Inmate Complaint Review System does not substantially comply with CRIPA (42 U.S.C. sec. 1997e) which provides an

[17]*Accord Earle v. Gunnell,* 554 A.2d 1256, 1260–61 (Md. App. 1989).

exception to the *Felder II* "no exhaustion" rule,[18] we hold that the plaintiff need not exhaust his state administrative remedies before bringing his sec. 1983 action in state court.

## III.

We must now decide whether the complaint states a claim for deprivation of property without due process of law. The circuit court dismissed the complaint for failure to state a claim because the plaintiff failed to allege the lack of an adequate postdeprivation remedy in Wiscon-

---

[18]Based on these conclusions, we reexamine three of our post-*Felder II* decisions:

We withdraw the following language in a note in *Staples v. Young,* 149 Wis. 2d 80, 87 n.9, 438 N.W.2d 567 (1989), in which we stated: "Exhaustion of state administrative procedure, including the inmate complaint review procedure, is required before prisoners may seek relief under 42 U.S.C. sec. 1983. *McKeever v. Israel,* 476 F. Supp. 1370 (E.D. Wis. 1979)." *McKeever* relies on *Secret v. Brierton,* 584 F.2d 823 (7th Cir. 1978) and predates *Patsy, Felder II* and the enactment of CRIPA. The *Secret* case, on which *McKeever* relied to conclude that exhaustion was required, was later explicitly repudiated by the Seventh Circuit. See *Owen v. Kimmel,* 693 F.2d 711, 714 (7th Cir. 1982) (concluding that its own decision in *Secret v. Brierton,* 584 F.2d 823 (7th Cir. 1978), was inconsistent with *Patsy* and CRIPA and reversing a district court decision relying on *Secret* to require exhaustion of state grievance procedures).

We disavow any intimation in *Saenz v. Murphy,* 162 Wis. 2d 54, 66, 469 N.W.2d 611 (1991), that prison inmates must exhaust their administrative remedies before they may commence a sec. 1983 action.

We withdraw our language in *Castelaz v. Milwaukee,* 95 Wis. 2d 513, 533–36, 289 N.W.2d 259 (1980), a pre-*Felder II* case, requiring exhaustion of state administrative remedies before commencing a sec. 1983 action.

sin law. See *Hudson v. Palmer,* 468 U.S. 517, 533 (1984); *Weber v. City of Cedarburg,* 129 Wis. 2d 57, 74–76, 384 N.W.2d 333 (1986).[19]

The *pro se* complaint must be construed liberally. *bin-Rilla v. Israel,* 113 Wis. 2d 514, 520–21, 335 N.W.2d 384 (1983). Broadly construed, the complaint may be interpreted as alleging a deprivation of property caused by conduct pursuant to an established state procedure. In *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982), the Supreme Court stated in the doctrine that a complainant does not have a sec. 1983 cause of action if an adequate postdeprivation state remedy exists does not reach a situation where the deprivation resulted from an "established state procedure." The complaint in this case can be read as alleging deprivation of property caused by conduct pursuant to established state procedure.[20] We conclude that the complaint states a cause of

---

[19]The United States Supreme Court has stated that "the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking . . . satisf[ies] the requirements of procedural due process." *Parratt v. Taylor,* 451 U.S. 527, 539 (1981) (footnote omitted).

[20]Casteel's complaint contains the following allegations:

4.) . . . each of the defendants . . . was responsible by state law for the property . . . of prisoners, including plaintiff . . ..

5.) . . . each defendant is guided by state statutes and administrative rules promulgated in accordance with state laws.

. . .

15.) On June 2, 1988 (solar), defendant Gram's [sic] informed plaintiff that he could not forward monies received for him to some-one out-side the institution. Once funds are received at Prison they are deposited into plaintiff's account (in accordance with the statute) and subject to the appropriate administrative codes and internal policies regarding prisoners funds.

22

action. We therefore remand the case to the circuit court for further proceedings not inconsistent with this opinion, including allowing the plaintiff to amend his complaint to allege further facts (including those demonstrating the inadequacy of other postdeprivation remedies).

For the reasons set forth we reverse the order of the circuit court and remand the cause for further proceedings not inconsistent with this opinion.

*By the Court.*—Reversed and remanded.