Kathleen LINDAS, Plaintiff-Appellant-Petitioner,

v.

Elmer CADY and Robert Hable, Defendants,

State of Wisconsin DEPARTMENT OF HEALTH & SOCIAL SERVICES, Defendant-Respondent.

Supreme Court

*No. 86–1910. Argued May 31, 1989.—Decided June 23, 1989.*

(Also reported in 441 N.W.2d 705.)

421

For the plaintiff-appellant-petitioner there were briefs by *Jeff Scott Olson* and *Julian, Olson & Lasker, S.C.*, Madison, and *Steven H. Steinglass,* Cleveland-Marshall College of Law, Cleveland, Ohio, and oral argument by *Mr. Steinglass.*

For the defendant-respondent the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

CALLOW, WILLIAM G., J.   This is a review of a decision of the court of appeals, *Lindas v. Cady,* 142 Wis. 2d 857, 419 N.W.2d 345 (Ct. App. 1987), affirming an order of the Dane County Circuit Court, Judge Angela B. Bartell, dismissing Kathleen Lindas's (Lindas) sex discrimination action under Title VII of the Civil Rights

Act of 1964[1] and 42 U.S.C. sec. 1983.[2]

On review we must determine whether the circuit court properly dismissed Lindas's Title VII and sec. 1983 claims. There are two issues regarding the Title VII claim. First, do Wisconsin state courts have concurrent jurisdiction with federal courts over Title VII actions? Second, if jurisdiction is concurrent, is Lindas's suit against the Department of Health and Social Services (DHSS) barred by the state's sovereign immunity? We conclude that the circuit court erred in dismissing the Title VII action. The Dane County Circuit Court had jurisdiction over the action and it is not barred by sovereign immunity.

There are also several issues with respect to the sec. 1983 claim. First, is the DHSS a "person" amenable to suit under sec. 1983? Second, if the DHSS is a "person," is Lindas's suit nonetheless barred by either sovereign

---

[1] 42 U.S.C. sec. 2000e–2(a)(1)(1982) which creates the substantive basis for Lindas's Title VII action provides:

[i]t shall be an unlawful employment practice for an employer—

(1)  to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ..

[2] 42 U.S.C. sec. 1983 (1982) provides:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

immunity, the statute of limitations or the principles of administrative res judicata? We conclude that Lindas's sec. 1983 action against the DHSS is barred because the DHSS is not a "person" subject to suit under sec. 1983. Therefore, we need not address the other sec. 1983 issues raised.

On August 15, 1979, Lindas was appointed to the position of Superintendent of Education in the Bureau of Program Resources of the Division of Corrections of the DHSS. On May 9, 1980, Lindas's supervisor gave her the choice of resigning or being discharged. She resigned on June 6, 1980.

On August 19, 1980, Lindas filed a complaint with the Wisconsin Personnel Commission alleging that incidents of sex discrimination contributed to her termination. The personnel commission, on January 3, 1985, issued its final decision regarding Lindas's complaint in which it held that there was not probable cause to believe that the DHSS discriminated against Lindas because of her sex.

On October 18, 1985, Lindas filed a complaint under 42 U.S.C. sec. 1983 in the Dane County Circuit Court against three of her supervisors, including defendants Elmer Cady (Cady) and Robert Hable (Hable). In her complaint Lindas alleged that Cady and Hable, by discharging her because of her sex, violated her right to equal protection of the laws as guaranteed by the fourteenth amendment to the United States Constitution. Lindas filed an amended complaint on February 6, 1986 in which she added a claim under Title VII of the Civil Rights of 1964, 42 U.S.C. sec. 2000e. In the amended complaint she also joined the DHSS as a defendant in both the sec. 1983 and Title VII claims.

On August 14, 1986, the Dane County Circuit Court, Judge Angela B. Bartell, issued an order dismissing the

sec. 1983 claim, holding that it was barred by the three-year statute of limitations set forth in sec. 893.54, Stats. The circuit court's order also dismissed the Title VII claim against the DHSS holding that the claim was barred by sovereign immunity.

Lindas appealed the order dismissing her two claims. The court of appeals affirmed the order concluding that both the sec. 1983 and Title VII claims against the DHSS were barred by sovereign immunity. *Lindas,* 142 Wis. 2d at 859. It did not address the issue of the statute of limitations. *Id.* at 858.

## TITLE VII

The first question we address is whether the circuit court erred in dismissing the Title VII claim. In order to answer this question we must determine whether state courts have jurisdiction concurrent with that of federal courts over Title VII actions.[3] The United States Supreme Court expressly left this question open in *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 479, n.20 (1982). This court also has expressly reserved judgment on this question. *Kurtz v. City of Waukesha,*

---

[3] We note that other courts addressing this issue have split on whether Title VII actions may be brought in state court. The following are representative cases which held that jurisdiction over Title VII actions is exclusively given to federal courts: *Valenzuela v. Kraft, Inc.,* 739 F.2d 434 (9th Cir. 1984); *Dickinson v. Chrysler Corp.,* 456 F. Supp. 43 (E.D. Mich. 1978); *Fox v. Eaton Corp.,* 48 Ohio St. 2d 236, 358 N.E.2d 536 (1976). The following are representative cases which held that jurisdiction over Title VII actons is given concurrently to both federal and state courts: *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402 (7th Cir. 1989); *Greene v. County School Board of Henrico County,* 524 F. Supp. 43 (E.D. Va. 1981); *Peper v. Princeton University Board of Trustees,* 77 N.J. 55, 389 A.2d 465 (1978).

91 Wis. 2d 103, 112, 280 N.W.2d 757 (1979). While we suggested that federal courts have exclusive jurisdiction in Title VII actions in *American Motors Corp. v. Department of Industry, Labor & Human Relations,* 101 Wis. 2d 337, 352–53, 305 N.W.2d 62 (1981), our suggestion was dicta and we are not bound by it. Therefore, we decide this issue for the first time in this case.

■

In determining whether state courts have jurisdiction concurrent with that of federal courts over an action involving a federal statute we must start with the presumption that jurisdiction is concurrent. *Charles Dowd Box Co., Inc. v. Courtney,* 368 U.S. 502, 507 (1962); *Terry v. Kolski,* 78 Wis. 2d 475, 484, 254 N.W.2d 704 (1977). This presumption may be overcome in three ways: "the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478 (1981).

■

We must now apply these principles to the present case in order to determine whether the presumption of concurrent jurisdiction has been overcome in Title VII actions. Our first inquiry is whether there is explicit statutory language in Title VII granting exclusive jurisdiction to federal courts. The DHSS relies heavily on *Valenzuela v. Kraft, Inc.,* 739 F.2d 434, 435 (9th Cir. 1984), for the proposition that several provisions in Title VII "contain the requisite 'unmistakable implication' of exclusive federal jurisdiction." The ninth circuit in *Valenzuela* found it significant that Title VII states "[a]ny civil action brought under this section . . . shall be subject to appeal as provided in sections 1291 and

1292, title 28." 42 U.S.C. sec. 2000e–5(j)(1982). The court pointed out that secs. 1291 and 1292 discuss only federal courts of appeal, thus implying that any action brought under Title VII is appealable to federal appellate courts. *Valenzuela,* 739 F.2d at 435.

The ninth circuit also noted that Title VII requires, in actions brought under it, courts to apply Rule 65 of the Federal Rules of Civil Procedure. *Id.* at 436. The court concluded from its analysis of these provisions that the drafters of Title VII could have only intended that Title VII actions be brought in federal courts where such appellate procedures and rules of civil procedure would be used. *Id.* at 435–36.

We find, however, the seventh circuit's decision in *Donnelly v. Yellow Freight System, Inc.,* 874 F.2d 402 (7th Cir. 1989), more persuasive on the issue of concurrent jurisdiction. The seventh circuit pointed out that congress, in enacting Title VII, was merely carrying out its constitutional power to grant jurisdiction to federal courts, and that "the mere grant of jurisdiction to a federal court does not operate to oust a state court from concurrent jurisdiction.. . ." *Id.* at 407, quoting *Gulf Offshore,* 453 U.S. at 479. The language relied upon in *Valenzuela* merely reflected the framers' intention that certain rules should be applicable in federal courts when such jurisdiction is used. *See* Note, *Concurrent Jurisdiction Over Title VII Actions,* 42 Wash. & Lee L. Rev. 1403, 1422 (1985). The DHSS has pointed to no provisions of Title VII which create exclusive jurisdiction in federal courts.

Our second inquiry in determining whether Title VII jurisdiction is concurrent is whether there is an unmistakable implication from the legislative history of Title VII that jurisdiction was exclusively given to the federal courts. The ninth circuit in *Valenzuela* found it significant that the drafters of Title VII made many

427

references to federal courts in discussing Title VII jurisdiction but did not mention state courts. *Valenzuela,* 739 F.2d at 436.

However, as the seventh circuit stated in *Donnelly,* "because Congress has the power to grant or deny jurisdiction to the federal district courts, the only significance that can be garnered from these references is that Congress intended to grant jurisdiction to the federal courts." *Donnelly,* 874 F.2d at 407. The references do not indicate that the framers of the provision intended to *exclude* state court jurisdiction. Thus, we find that legislative history does not overcome the presumption of concurrent jurisdiction.

Our final inquiry into the jurisdictional issue is whether there is a clear incompatibility between state court jurisdiction and federal interests. "The factors generally recommending exclusive federal-court jurisdiction over an area of federal law include the desirability of uniform interpretation, the expertise of federal judges in federal law, and the assumed greater hospitality of federal courts to peculiarly federal claims." *Gulf Offshore,* 453 U.S. at 483–84. We find none of these factors present in this case.

State judges, like federal judges, are bound by the supremacy clause to apply federal law in state courts. There is no reason to believe that state courts are more likely than federal courts to interpret Title VII in a nonuniform manner. Further, state court judges are well qualified to decide federal employment discrimination claims because they have a familiarity with similar state-created employment discrimination laws. *Donnelly,* 874 F.2d at 407–408. Finally, there is no reason to believe federal courts are more hospitable to federal claims than state courts. State courts already have concurrent jurisdiction over sec. 1983 actions which often involve simi-

lar issues to those in Title VII actions and there is no indication that plaintiffs in state court actions are treated less fairly than their counterparts in federal court. *Terry,* 78 Wis. 2d at 496.

We find, therefore, that the DHSS is unable to overcome the presumption that state courts enjoy concurrent jurisdiction over Title VII actions. We hold that jurisdiction over Title VII actions is not exclusively given to federal courts and we expressly reject any dicta in our prior opinions which may indicate otherwise.

We next address the issue of whether Lindas's suit against the DHSS is barred by the state's sovereign immunity. Both Lindas and the DHSS agree that if jurisdiction over Title VII is concurrent, Title VII acts to abrogate state sovereign immunity in Title VII actions. Federal law governs the immunities which apply to suits in state courts over federal causes of actions. States may not assert their own sovereign immunity if it is against the intent of the drafters of the federal statute. *Martinez v. California,* 444 U.S. 277, 284 (1980).

In the case of Title VII the intent of the framers is clear. The 1972 amendments to Title VII clearly indicate that Congress intended that states would be defendants to Title VII actions. As we stated in *Kurtz,* 91 Wis. 2d at 111, Title VII "was amended in 1972 to bring within its protection state and local government employees." Indeed, Title VII includes within the definition of "person," "governments, governmental agencies, [and] political subdivisions." 42 U.S.C. sec. 2000e(a).

Such an intention in federal law must be carried out even over claims of state sovereignty. Indeed, the United States Supreme Court in *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976), held that Title VII actions may be brought against states in federal court, overcoming the sovereign

immunity embodied in the eleventh amendment. The Court noted that Title VII was passed pursuant to sec. 5 of the fourteenth amendment which states that congress has the power to enforce the fourteenth amendment by appropriate legislation. *Id.* at 453 n.9. This exercise of congressional power under the fourteenth amendment limits the sovereign immunity claimed by the states under the eleventh amendment. *Id.* at 456.

The eleventh amendment only applies to suits against states in federal courts. Because the present case was brought in state court, *Fitzpatrick* is not directly applicable to this case. However, the principles stated in *Fitzpatrick* are clearly applicable. The Court in *Fitzpatrick* noted that sec. 5 of the fourteenth amendment effected a shift in the federal-state balance. *Id.* at 454. The fourteenth amendment limited the power of states and enlarged the power of congress. *Id.* The Court concluded "[w]e think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts." *Id.* at 456. We conclude that congress, in enacting Title VII and its 1972 amendments, intended to override not only the eleventh amendment immunity of the states but the immunity that states would claim in actions against them in their own courts.

Having concluded that state courts have concurrent jurisdiction with federal courts over Title VII actions and that the state may not assert its sovereign immunity in a Title VII action in its own court, we conclude that Lindas's Title VII action may proceed. We reverse that portion of the court of appeals opinion which determined otherwise.

## SECTION 1983

We now turn to the question of whether the circuit court erred in dismissing Lindas's sec. 1983 claim. Although the DHSS raises several defenses to this claim, we find it necessary only to address the issue of whether a state is a "person" amenable to suit under sec. 1983. In its recently issued decision, *Will v. Michigan Dep't of State Police,* 109 S. Ct. 2304 (1989), the United States Supreme Court determined that states are not "persons" within the meaning of sec. 1983. The Court found that this result was compelled by the statute's language, congressional purpose and legislative history. *Id.* at 2307–11.

The Supreme Court's holding in *Will* applies to "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes." *Id.* at 2311. The DHSS is certainly such a governmental entity. We, therefore, find that Lindas's sec. 1983 action against the DHSS is barred because the DHSS is not a "person" subject to suit under sec. 1983.

Based upon the foregoing reasons we affirm the decision of the court of appeals on the dismissal of Lindas's sec. 1983 claim but reverse the decision of the court of appeals on the dismissal of the Title VII claim.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and remanded.