Kathleen LINDAS, Plaintiff-Appellant-Petitioner,

v.

Elmer CADY, Robert Hable, State of Wisconsin Department of Health & Social Services, Defendants-Respondents.

Supreme Court

*No. 91–1293. Oral argument March 1, 1994.—Decided May 17, 1994.*

(Also reported in 515 N.W.2d 458.)

548

For the plaintiff-appellant-petitioner there were briefs by *Jeff Scott Olson* and *Julian, Olson & Lasker, S.C.,* Madison and oral argument by *Jeff Scott Olson.*

For the defendants-respondents the cause was argued by *Bruce A. Olsen,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

JON P. WILCOX, J.   This is a review of a published decision of the court of appeals, *Lindas v. Cady,* 175 Wis. 2d 270, 499 N.W.2d 692 (Ct. App. 1993) *(Lindas II),* which affirmed the circuit court's dismissal of petitioner's 42 U.S.C., sec. 1983 (sec. 1983) claims. Both the circuit court and the court of appeals held that Kathleen Lindas's (Lindas) sec. 1983 claims were precluded by an earlier unreviewed finding by the Wisconsin Personnel Commission (Commission) that there was no probable cause to believe that the Department of Health and Social Services (DHSS) discriminated against Lindas because she was a woman. We agree that the commission's findings preclude Lindas from relitigating the issue of sex discrimination in her sec. 1983 action. Unlike the court of appeals, however, we rely upon the doctrine of issue preclusion rather than claim preclusion or estoppel by record, to reach that conclusion.

In August of 1979, Lindas was appointed Superintendent of Education of the Bureau of Program Resources in the Corrections Division of DHSS. She was to serve a one year probationary period. In May of 1980, defendant Hable, Lindas's supervisor at DHSS, gave Lindas the option to resign or be discharged. Lindas resigned. Shortly thereafter she filed a complaint with the commission alleging that DHSS

discriminated against her on the basis of sex, contrary to the Wisconsin Fair Employment Act, (WFEA) secs. 111.31–111.37, Stats. (1979–80).

On February 9, 1981, following an investigation, the commission issued an initial determination that there was no probable cause to support Lindas's allegations of sexual discrimination. Lindas appealed that determination to the full commission, and in January and March of 1983, a hearing examiner from the Department of Industry, Labor and Human Relations conducted four days of hearings on the matter. At these hearings, Lindas called witnesses and cross-examined hostile witnesses. She offered approximately fifty exhibits into the hearing record. After the hearing, Lindas submitted a legal brief and entered the deposition of an expert witness into the hearing record. In December of 1984, she presented oral arguments directly before the commission. Lindas was represented by legal counsel throughout the entire administrative process.

On January 3, 1985, the commission affirmed its initial determination that there was no probable cause to believe that DHSS discriminated against Lindas because she was a woman.

Lindas chose not to have the commission's determination judicially reviewed, although that option was available to her. Rather, she brought an original sec. 1983 action in the circuit court for Dane County. Lindas's sec. 1983 complaint accused her supervisors at DHSS, including the individual defendants, of sexual discrimination, in contravention of her constitutional right to equal protection. Lindas subsequently amended her complaint to include a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C., sec. 2000e (Title VII). The amended complaint also

joined DHSS as a defendant in both the sec. 1983 and Title VII claims. Lindas's Title VII claims are not before us today.

Rather, this appeal deals solely with Lindas's sec. 1983 claims. In August of 1986, Dane County Circuit Court Judge Angela Bartell dismissed those claims because they had not been brought within what Judge Bartell held was the three year statutory period.

In *Lindas v. Cady,* 150 Wis. 2d 421, 431, 441 N.W.2d 705 (1989) (*Lindas I*), this court affirmed Judge Bartell's dismissal of Lindas's sec. 1983 claim against DHSS, holding that under *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989), governmental entities such as DHSS are not "persons" amenable to suit under sec. 1983. *Lindas I,* 150 Wis. 2d at 431. Our decision in *Lindas I,* however, did not address the statute of limitations issue. Subsequently, Judge Bartell reinstated Lindas's sec. 1983 actions against the individual defendants in light of a seventh circuit court of appeals decision which established a six-year statute of limitations for such claims.

In August of 1990, Judge Bartell dismissed Lindas's remaining sec. 1983 claims, holding that the commission's no probable cause determination estopped Lindas from relitigating the issue of sex discrimination. Judge Bartell believed that preclusion was proper because an identity of parties and issues existed between Lindas's WFEA suit and her sec. 1983 claims, Lindas had a full and fair opportunity to litigate before the commission, and the "probable cause" burden of proof which Lindas failed to satisfy before the commission was lower than the burden she would have to sustain in the sec. 1983 action.

The court of appeals affirmed. Drawing in large measure upon Judge Bartell's analysis, and relying as

well upon the Supreme Court's decision in *University of Tennessee v. Elliott,* 478 U.S. 788 (1986), the court of appeals held that the common law doctrine of estoppel by record precluded Lindas's sec. 1983 claims. *Lindas II,* 175 Wis. 2d at 285.

In its decision, the court refused to consider Lindas's contention that she lacked the necessary incentive to litigate before the commission. Incentive to litigate, the court held, was a factor only under the doctrine of issue preclusion. In this case, because it was relying upon the doctrine of estoppel by record, not issue preclusion, the court did not believe that Lindas's incentive to litigate was a relevant consideration. *Id.* at 287–88.

The court also held that under *Acharya v. AFSCME, Council 24, WSEU, AFL–CIO, Local No. 1,* 146 Wis. 2d 693, 432 N.W.2d 140 (Ct. App. 1988), it did not matter that Lindas chose not to have the commission's findings judicially reviewed. In the court of appeals' view, the crucial fact was that judicial review was available to Lindas. That she chose not to exercise that right for tactical reasons does not impact the preclusion analysis. *Lindas,* 175 Wis. 2d at 298.

The question we must decide is whether the commission's unreviewed determination of no probable cause now precludes Lindas's sec. 1983 claim. The application of preclusion doctrines to a given set of facts is a question of law which this court reviews without deference to lower courts. *DePratt v. West Bend Mutual Insurance Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983).

Our analysis begins with the United States Supreme Court's decision in *Elliott.* As the opening

552

paragraph from *Elliott* reveals, the facts in that case were similar to those before us today:

> A state Administrative Law Judge determined that petitioner University of Tennessee . . . was not motivated by racial prejudice in seeking to discharge respondent. The question presented is whether this finding is entitled to preclusive effect in federal court, where respondent has raised discrimination claims under various civil rights laws, including Title VII of the Civil Rights Act of 1964, . . ., and 42 U.S.C. sec. 1983.

*Elliott,* 478 U.S. at 790.[1]

Like Lindas, the complainant in *Elliott* elected not to have the state agency's findings judicially reviewed. Rather, following the agency's determination, he brought his civil rights actions directly into federal district court. *Id.* at 792.

With respect to Elliott's Title VII claims, the Supreme Court held that the unreviewed determinations of state agencies cannot preclude a claimant from initiating a subsequent Title VII suit in court. The court believed its decision was dictated by the language and history of Title VII, which revealed a legislative intent to accord plaintiffs a trial de novo. *Id.* at 797.

As to sec. 1983, however, the court concluded otherwise. Specifically, the court found that "the legislative history of sec. 1983 does not in any clear way suggest that Congress intended to repeal or restrict the traditional doctrines of preclusion." *Id.,* quoting *Allen v. McCurry,* 449 U.S. 90, 97–98 (1980). Moreover, the

---

[1] Although *Elliott* speaks directly to the preclusive effect of state administrative factfindings in subsequent *federal* court proceedings, its analysis is equally applicable to sec. 1983 actions in state court.

court believed that giving preclusive effect to administrative factfinding "serves the value underlying general principles of collateral estoppel: enforcing repose." *Elliott,* 478 U.S. at 798. The imposition of repose, in turn, furthers the parties' interest in avoiding costly and vexatious relitigation, and conserves judicial resources. *Id.* Accordingly, the court went on to articulate the following analysis:

> [W]e hold that when a state agency, "acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," (citation omitted), federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts.

*Id.* at 799.

The methodology established in *Elliott* is clear. When deciding whether to give preclusive effect to the unreviewed factfindings of state agencies in sec. 1983 cases, courts must first determine a) whether the agency was adjudicating a disputed issue of fact properly before it and b) whether the agency's proceedings provided the parties an adequate opportunity to litigate. Only if both of these conditions are satisfied can the court advance to the second stage of analysis, that being whether under state law, do the agency's findings have preclusive effect.

In this case, Lindas does not dispute that the commission was acting in an adjudicatory capacity when it reviewed the initial "no probable cause" determination. Similarly, it is not, nor can it be disputed that the issue of sex discrimination was properly before the commission in the context of Lindas's WFEA litigation. In this

regard, at least, the commission's proceedings clearly satisfy the requirements of *Elliott.*

We next must determine whether those proceedings provided Lindas an "adequate" opportunity to litigate. While *Elliott* itself provides little guidance as to what constitutes "adequacy" in this context, other Supreme Court cases, most notably, *Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982) provide insight.

In *Kremer,* the plaintiff charged his employer with employment discrimination. *Id.* at 463. As required by New York state law, Kremer's claims were initially directed to the New York Division of Human Rights (NYHRD). That agency found no probable cause to support Kremer's allegations. *Id.* at 463–64. That finding was subsequently affirmed both by the NYHRD appeals board and by the Appellate Division of the New York Supreme Court. *Id.* at 465.

Following the state court's review, Kremer initiated an original Title VII action in federal district court. *Id.* at 465. That court dismissed his suit, however, on the grounds that the prior state proceedings precluded relitigation of the employment discrimination issue. *Id.* at 466. On appeal to the United States Supreme Court, Kremer argued that he should not have been precluded from litigating his discrimination claims in federal court, in part because the procedures available to him during the state proceedings were inadequate.

The Supreme Court disagreed, explaining that in order to have preclusive effect, the NYHRD proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause . . .." *Id.* at 481. The court then cited a number of factors which led it to conclude

555

that Kremer had in fact been afforded those minimum procedural requirements. Most significantly, the administrative process allowed Kremer to present witnesses and exhibits to establish his accusations, to rebut the respondent's evidence, to have an attorney's assistance, to request the issuance of subpoenas, and to seek judicial review of the agency's determination. *Id.* at 483–84.

In many respects, the Supreme Court's analysis of "minimum procedural requirements" in *Kremer* mirrors that set forth at Section 83 of the Restatement (Second) of Judgments (1982). That section provides that in order for an administrative determination to have preclusive effect, it must entail "the essential elements of adjudication," including:

> (a) Adequate notice to persons who are to be bound by the adjudication . . .;
>
> (b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties;
>
> (c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or statutes, or a species thereof;
>
> (d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and
>
> (e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the oppor-

tunity of the parties to obtain evidence and formulate legal contentions.

We believe that the factors relied upon by the Supreme Court in *Kremer,* in conjunction with the criteria listed in Section 83 of the Restatement (Second) of Judgments, can guide our inquiry into whether a particular agency's proceedings offered a party "adequate" opportunity to litigate. As the Supreme Court noted in *Kremer,* of course, no single model of procedural fairness can be applied to every situation. *Kremer,* 456 U.S. at 483. Undoubtedly, there will be instances when an agency's procedures are inadequate.

This is not such a case. As the following litany by Judge Bartell reveals, the administrative process provided Lindas extensive procedural rights:

> [Lindas] requested and received time extensions amounting to two years from the filing of the charge in which to conduct pre-hearing discovery. She was permitted to substitute the original hearing examiner. She was able to subpoena witnesses and to have all witnesses sequestered. She was represented by counsel throughout the entire proceeding. At the probable cause hearing, counsel gave an opening statement, examined and cross-examined witnesses and presented 50 exhibits for the hearing record. Her counsel was allowed to depose a witness and submit a brief after the hearing. She had the opportunity to petition the Personnel Commission for re-hearing and to seek judicial review of the Commission's findings and conclusions.

Given these facts, we conclude that the administrative process in this case provided Lindas "adequate" opportunity to litigate the issue of sexual discrimination. As a result, we shift our focus to the second level of analysis mandated by *Elliott.* Specifically, we must

557

determine whether under Wisconsin law, Lindas's sec. 1983 claims are precluded.

Wisconsin's preclusion doctrines align essentially into the fields of claim preclusion and issue preclusion. Before delving into an analysis of these doctrines, however, we note Lindas's assertion that under *Elliott,* courts can only apply issue preclusion, not claim preclusion principles, to the unreviewed findings of state administrative agencies. A comparison of these doctrines reveals why Lindas would have us adopt the narrower view of *Elliott.*

■

Under claim preclusion, or res judicata, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *DePratt v. West Bend Mutual Insurance Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983). "Estoppel by record," the doctrine relied upon by the circuit court and court of appeals in this case, is identical to claim preclusion except that it is the record of the earlier proceeding, rather than the judgment itself, which bars the subsequent proceeding. *Brooks v. Bank Of Wisconsin Dells,* 161 Wis. 2d 39, 46, 467 N.W.2d 187 (Ct. App. 1991). In order for claim preclusion or estoppel by record to apply, there must be an identity of parties or their privies and an identity of claims in the two cases. *DePratt,* 113 Wis. 2d at 311.

■

Issue preclusion, on the other hand, is designed to limit the relitigation of issues that have been actually litigated in a previous action. Unlike claim preclusion, an identity of parties is not required. As we explained in *Michelle T. v. Crozier,* 173 Wis. 2d 681, 687–88, 495 N.W.2d 327 (1993), formalistic applications of issue

558

preclusion have given way to a looser, equities-based application of the doctrine. In *Michelle T.,* we noted that the more modern approach to issue preclusion requires courts to conduct a "fundamental fairness" analysis. Under this analysis, courts consider an array of factors in deciding whether issue preclusion is equitable in a particular case. *Id.* at 688–89.

As the above comparison indicates, issue preclusion is in some respects a narrower doctrine than claim preclusion. For example, issue preclusion requires that the issue sought to be precluded must have been *actually* litigated previously. Claim preclusion, on the other hand, extends to any and all claims that either were or which *could have been* asserted in the previous litigation. Moreover, issue preclusion generally allows courts to consider a somewhat broader array of equitable factors when considering whether or not to prevent relitigation.

Lindas is not alone in her belief that *Elliott* limits courts to reliance upon issue preclusion.[2] In this case, of course, the court of appeals applied the claim preclusion-related doctrine of estoppel by record. We need not decide whether the court of appeals was justified in doing so. Irrespective of *Elliott*'s views with respect to claim preclusion, the decision clearly allows the application of issue preclusion principles. And in this case, we conclude that issue preclusion applies, and that it

---

[2] "[I]t is unclear whether federal courts are required to borrow all aspects of state policies on administrative res judicata. For example, the *Elliott* court did not discuss whether federal courts must follow state policies that apply administrative res judicata to legal conclusions or that apply claim preclusion to administrative proceedings." Steven H. Steinglass, *Section 1983 Litigation in State Courts,* sec. 19.2(a)(1) (1993).

prevents Lindas from relitigating the issue of sex discrimination.

First, it is clear that in her sec. 1983 action, Lindas is attempting to relitigate an issue that was actually litigated in her previous WFEA suit. This is revealed by the respective pleadings in those cases. Lindas's WFEA complaint alleged that:

> Incidents of sex discrimination contributed to my forced constructive discharge from my position at the Division of Corrections which was effected on July 4th, 1980. I am requesting as a remedy for this discriminatory activity that I be reinstated to my previously held position with the Division of Corrections or to a like position.

Similarly, Lindas's civil rights complaint in circuit court stated that:

> The constructive discharge of plaintiff Lindas, under circumstances in which a male superintendent would not have been discharged, constituted unlawful discrimination on the basis of sex in violation of her right to equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States.

Clearly, the central factual dispute in each case is whether sexual discrimination played a role in Lindas discontinuing her employment at DHSS. Lindas litigated that issue before the commission, and she lost. As the commission concluded in its final determination, "[Lindas] failed to produce sufficient evidence to show probable cause to believe respondent discriminated against her because of her sex with respect to her resignation."

Moreover, we find that applying issue preclusion in this case comports with the "fundamental fairness"

analysis articulated in *Michelle T.* In *Michelle T.*, we noted a series of factors which courts have deemed significant to protect the rights of parties to a full and fair adjudication of the issues. *Michelle T.*, 173 Wis. 2d at 689. Those factors include the following:

> (1) could the party against whom preclusion is sought, as a matter of law, have obtained judicial review of the judgment; (2) is the question one of law that involves two distinct claims or intervening contextual shifts in the law; (3) do significant differences in the quality or extensiveness of proceedings between the two courts warrant relitigation of the issue; (4) have the burdens of persuasion shifted such that the party seeking preclusion had a lower burden of persuasion in the first trial than in the second; or (5) are matters of public policy and individual circumstances involved that would render the application of collateral estoppel to be fundamentally unfair, including inadequate opportunity or incentive to obtain a full and fair adjudication in the initial action.[3]

In this case, as we have already noted, Lindas could have had the commission's findings judicially reviewed, but chose not to. As to the adequacy of the commission's proceedings, we believe that analysis is for all intents and purposes equivalent to *Elliott's* "adequate opportunity to litigate" requirement. We have already determined that the latter has been satisfied in this case. With respect to burdens of proof, the burden Lindas faces in her sec. 1983 action is undeniably greater than that which she failed to satisfy before the commission.[4]

---

[3] Restatement (Second) of Judgments, sec. 28 (1982).

[4] The commission applied the following definition of "probable cause" when it reviewed Lindas's WFEA allegations:

561

In fact, the only exception which Lindas specifically calls to our attention is that which provides that issue preclusion shall not apply if the party "because of the conduct of his adversary or other special circumstances, did not have an adequate opportunity *or incentive* to obtain a full and fair adjudication in the initial action." (Emphasis added.) Specifically, Lindas asserts that she lacked the necessary incentive to litigate before the commission because those proceedings offered her no actual relief.

We find Lindas's arguments in this regard unpersuasive. Lindas was not a reluctant party dragged into the WFEA suit. She initiated that suit herself, and a finding of probable cause was a necessary hurdle she had to overcome in order to be entitled to the statutory remedies under WFEA, including back pay and reinstatement. Section 111.36(3)(c), Stats, (1979–80). While these may not be the remedies Lindas eventually sought to obtain in a sec. 1983 action, we hesitate to classify them as inconsequential.

In addition, we note that if Lindas was truly dissatisfied with her remedies under WFEA, she could have taken her sec. 1983 claim directly into federal district court. In June of 1982, well before Lindas's hearing before the commission, the United States

---

Probable cause exists when there is reasonable ground for belief supported by facts or circumstances strong enough in themselves to warrant a reasonable person in the belief that discrimination probably has been or is being committed.

In her sec. 1983 suit, Lindas would have to meet the higher burden of proving "to a reasonable certainty by evidence which is clear, satisfactory and convincing that her employer by an abuse or misuse of power intentionally committed sex discrimination which deprived her of a right guaranteed under the U.S. Constitution or federal statute." *See,* Wis. J.I.—Civil 2151 (1993).

Supreme Court held that federal courts could not require sec. 1983 plaintiffs to exhaust their state administrative remedies prior to coming into federal court. *Patsy v. Board of Regents,* 457 U.S. 496, 500–01 (1982).

More importantly, Lindas's own behavior contradicts her assertion that she lacked incentive to litigate. Following issuance of the initial "no probable cause" determination in 1981, Lindas appealed her WFEA claim to the commission, and contrary to her assertions now, the evidence suggests that she litigated that review aggressively. We believe that Lindas's conduct in this respect is the best indicator of her incentive to litigate.

Lindas makes several additional arguments as to why applying issue preclusion in this case would be inequitable. First, she states that our decision to give the commission's unreviewed findings preclusive effect overrules clear past precedent upon which she relied, and therefore, under *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106 (1971), it cannot be retroactively applied. To support her argument, Lindas cites a number of Wisconsin appellate decisions, *Duel v. State Farm Mutual Automobile Insurance Co.,* 240 Wis. 161, 1 N.W.2d 887 (1942), *State ex rel. Schleck v. Zoning Board of Appeals,* 254 Wis. 42, 35 N.W.2d 312 (1948), *Fond du Lac v. Department of Natural Resources,* 45 Wis. 2d 620, 173 N.W.2d 605 (1970), *Board of Regents v. Wisconsin Personnel Commission,* 103 Wis. 2d 545, 309 N.W.2d 366 (Ct. App. 1981), and *Davis v. Psychology Examining Board,* 146 Wis. 2d 595, 431 N.W.2d 730 (Ct. App. 1988), which she says prove that this state has never accorded preclusive effect to unreviewed administrative decisions.

563

Several of the above-cited cases do contain broad language which, on their face, appear to support Lindas's argument. For instance, in *Fond du Lac,* this court stated that:

> It has long been established in this jurisdiction that the doctrine of res judicata has no application to the proceeding of an administrative agency such as the [DNR].

*Id.* at 625.

Nonetheless, we believe Lindas misreads these cases. For instance, the holding in *Board of Regents* was that preclusion principles do not apply when a court engages in a Chapter 227 review of an agency's findings. *Id.* at 552. *Board of Regents* has no bearing whatsoever upon this case. Its holding simply echoes the position adopted by the Restatement (Second) of Judgments, which in the comment to Section 83 states that:

> The rule of this Section [extending preclusive effect to administrative adjudications] applies as between successive actions or proceedings. It does not apply when a determination of an administrative tribunal is being subjected to direct judicial review.

Lindas is not seeking judicial review of the commission's findings, but rather is attempting to maintain an original civil rights action in state court. Clearly, *Board of Regents* is not inconsistent with our holding today.

The other cases Lindas cites, *Duel, Schleck, Fond du Lac,* and *Davis,* all deal with the ability of agencies to reconsider their own unreviewed determinations. In holding that agencies are not precluded from doing so, the cases all reflect the holding in *Duel* which stated

that, "[t]he extent of the power of an administrative body or agency to reconsider its own findings or orders has nothing to do with res judicata; the latter doctrine applies solely to courts." *Id.* at 181.

The extent of an agency's ability to reexamine its prior determinations is not at issue today. The issue before us is the ability of courts to give preclusive effect to unreviewed agency determinations. Because the cases Lindas cites do not address this issue, they cannot be characterized as being inconsistent with today's holding.

In addition, none of these four cases implicate an agency acting in an adjudicative capacity. Rather, in each case, the agency determination being reconsidered was one in which the agency was acting in a quasi-legislative capacity.[5] In this respect as well, the cases Lindas relies upon are not inconsistent with our decision today, which gives preclusive effect, in some situations, to the determinations of agencies acting in an adjudicatory capacity.

Finally, the clearest statement of the law with respect to the preclusive effect of administrative determinations during the time period at issue in this case was *United States v. Utah Construction & Mining Co.,* 384 U.S. 394 (1966). That case clearly indicated that in certain situations, courts can give unreviewed agency determinations preclusive effect. *Id.* at 422. For all these reasons, we reject Lindas's contention that *Chev-*

---

[5] *Duel, Schleck, Davis* and *Fond du Lac* all dealt with agencies exercising their licensing and/or regulatory authority. Unlike Lindas's hearing before the commission, they did not involve an adjudication.

*ron* prevents the retroactive application of today's decision.[6]

---

[6] The dissenting opinion states that "it was not until 1986 that the potential preclusive effect of unreviewed state agency determinations became a factor in the strategic calculus of a would-be section 1983 plaintiff." *Lindas v. Cady,* 183 Wis. 2d at 572 (Abrahamson, J., dissenting.) The dissent, however, fails to square its historical analysis with the following language from *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 421–422, a *1966* Supreme Court decision:

> Occasionally courts have used language to the effect that res judicata principles do not apply to administrative proceedings, but such language is certainly too broad. *When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.* (Emphasis added.)

In addition, the dissent incorrectly states that *Kremer v. Chemical Construction Corporation,* 456 U.S. 461 (1982) affords preclusive effect only to reviewed administrative determinations. While it is true that the agency's factfindings in *Kremer* were judicially reviewed, that fact did not appear to be significant to the Court. The focus of the Court's inquiry in *Kremer* was on the adequacy of the state administrative proceedings. In concluding that those proceedings were adequate, the Court cited the *availability* of judicial review, not the fact that review had been obtained. *Id.* at 484. That this was the true nature of the analysis in *Kremer* is revealed by the Court's conclusion that, "[t]he fact that Mr. Kremer failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy." *Id.* at 485. We also note that *Kremer* cites with approval the above-quoted reasoning from *Utah Construction & Mining. Id.* at 484–85 n.26.

We believe *Utah Construction & Mining* and *Kremer* clearly foreshadowed *Elliott's* later, explicit application of administrative res judicata to sec. 1983 claims.

Lindas's final argument is that it would be inequitable to give preclusive effect to the commission's hearings because during the time period at issue, Wisconsin law, per *Castelaz v. City of Milwaukee,* 94 Wis. 2d 513, 289 N.W.2d 259 (1980), and *Kramer v. Horton,* 128 Wis. 2d 404, 383 N.W.2d 54 (1986), required claimants to exhaust their state administrative remedies prior to initiating a sec. 1983 action in state court. She argues that this exhaustion requirement, coupled with preclusion, impermissibly bars her access to state court.

Lindas's argument requires us to determine whether, during the time period at issue, Wisconsin required sec. 1983 plaintiffs to exhaust their administrative remedies. The two most relevant cases in this respect are *Castelaz* and *Patsy.* In *Castelaz,* this court held that the circuit court correctly dismissed the plaintiff's sec. 1983 action because he failed to exhaust his administrative remedies. In our discussion, we observed that federal courts generally did not require exhaustion in sec. 1983 cases. *Castelaz,* 94 Wis. 2d at 534. Believing, however, that this "no-exhaustion" requirement should not be "woodenly" applied, we opted to follow those federal courts which had imposed an exhaustion requirement on sec. 1983 claimants. *Id.* at 535.

As the above paragraph indicates, *Castelaz* struck an ambivalent stance towards exhaustion. While noting that generally exhaustion was not required, the court nonetheless imposed an exhaustion requirement in that case.

The law with respect to exhaustion became much clearer in June of 1982 when the United States Supreme Court delivered its decision in *Patsy. Patsy* unequivocally rejected the application of any and all

exhaustion requirements in sec. 1983 cases. *Patsy,* 457 U.S. 500–01 "this court has stated categorically that exhaustion is not a prerequisite to an action under sec. 1983, and we have not deviated from that position in [19 years.]"

*Patsy* is crucial in understanding the position Lindas found herself in following the commission's initial "no probable cause" determination.[7] *Patsy* was decided in June of 1982, more than six months before Lindas's hearing before the commission. The clear implication of *Patsy* was that exhaustion of state administrative remedies could not be required of sec. 1983 plaintiffs. Moreover, *Patsy* overturned those federal decisions upon which this court had relied to impose an exhaustion requirement against the plaintiff in *Castelaz.* We believe that a plaintiff in Lindas's position could *not* reasonably have felt compelled to exhaust her administrative remedies prior to initiating an original sec. 1983 action in state court. Nor do we believe that the law would have imposed such a requirement, given the Supreme Court's holding in *Patsy.*

It is true that this court, beginning in *Kramer,* did require exhaustion for sec. 1983 plaintiffs in state court.[8] *Kramer,* however, has no bearing on this case. That case was decided in 1986, several years after Lindas elected to have her discrimination allegations adjudicated by the commission. Thus, our holding in *Kramer* could not possibly have affected Lindas's deci-

---

[7] Lindas concedes that it was perfectly clear to her at the time that the commission's initial "no probable cause" determination carried no preclusive effect in and of itself.

[8] This exhaustion requirement was abandoned in *Casteel v. Vaade,* 167 Wis. 2d 1, 481 N.W.2d 476 (1992).

sion to forego an original sec. 1983 action in state court.[9]

Following *Patsy,* and prior to *Kramer,* Lindas could have brought her sec. 1983 claims directly into state or federal court. Instead, she elected to go before the commission. The record indicates that those proceedings provided her with a full and fair opportunity to litigate her allegations of sex discrimination. And she lost. Pursuant to *Elliott* and this state's laws of issue preclusion, she cannot relitigate that issue in circuit court.

*By the Court.*—The decision of the Court of Appeals is modified, and as modified, affirmed.

---

[9] For similar reasons, we also reject Lindas's assertion that certain language in *Kramer* contributed to her belief that Wisconsin would not accord preclusive effect to the commission's unreviewed findings. The passage Lindas refers to is the following:

> Moreover, exhaustion does not foreclose access to the federal courts. Under *Patsy,* a sec. 1983 plaintiff can elect to pursue a claim in federal court without exhausting administrative remedies. In addition, a sec. 1983 plaintiff can pursue a claim in federal court even after exhausting state administrative remedies because res judicata and collateral estoppel do not attach to state administrative agency determination.

*Kramer,* 128 Wis. 2d at 419.

We do not believe this language supports Lindas's preclusion arguments. First, not only is the language pure dicta, it also fails to cite any Wisconsin authority for its position. Second, it runs contrary to the holdings in *Duel,* et al., which limit the nonapplication of preclusion principles to an agency's own determinations. *See,* discussion at text, pages 564–565, *supra.* Most importantly, *Kramer* was decided well after Lindas's proceedings before the commission were completed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The plaintiff in this case processed her claim in accordance with the law then in existence. The majority opinion creates a new rule of administrative preclusion and applies it retroactively to the plaintiff. As Judge Sundby explained in his dissent in the court of appeals,[1] issue preclusion is an equitable doctrine, subject to equitable principles. I believe this retroactive application of a new rule of law is fundamentally unfair, and I dissent.

In August 1980, the plaintiff reasonably believed that she was required under Wisconsin law to exhaust available administrative remedies before she could sue under section 1983. *See Castelaz v. Milwaukee,* 94 Wis. 2d 513, 536, 289 N.W.2d 259 (1980). Accordingly she filed employment discrimination charges with the Wisconsin Personnel Commission.[2] The majority contends that by 1983, when the plaintiff appealed the initial probable cause determination to the entire Personnel Commission, she should have realized that the United States Supreme Court had vitiated the exhaustion requirement. *See Patsy v. Board of Regents,* 457 U.S. 496, 503–503 (1982).

The majority holds the plaintiff to a more prescient understanding of the law than the courts demonstrated. The Wisconsin courts did not follow *Patsy.* In

---

[1] *Lindas v. Cady,* 175 Wis. 2d 270, 297, 499 N.W.2d 692 (Ct. App. 1993) (Sundby, J. dissenting). Judge Sundby reasoned that issue preclusion, not claim preclusion, was the relevant doctrine, and concluded that issue preclusion is not applicable in this case.

[2] Only if she directly challenged the adequacy of the administrative remedy or the fairness of the administrative process could she have escaped the exhaustion requirement. *Castelaz,* 94 Wis. 2d at 535.

*Kramer v. Horton,* 128 Wis. 2d 404, 419, 383 N.W.2d 54, *cert. denied,* 479 U.S. 918 (1986), this court reaffirmed its adherence to the exhaustion requirement in section 1983 cases.[3] Thus, if the plaintiff wanted to be sure her section 1983 claim would not be dismissed on the grounds that she had failed to exhaust her administrative remedies, she acted prudently.

Equally important, in order to preserve a claim under Title VII of the Civil Rights Act, the plaintiff was required to pursue administrative remedies. *Love v. Pullman,* 404 U.S. 522, 523 (1972); 42 U.S.C. sec. 2000(e) (Title VII). If she had done as the majority suggests and foregone the administrative process, the plaintiff could have lost the opportunity to litigate her Title VII employment discrimination claims in court.

Moreover, contrary to the majority's reasoning, I do not believe that in 1980 a reasonable plaintiff could have been expected to conclude that Wisconsin courts accorded preclusive effect to the unreviewed fact-finding of an administrative agency. Under the then-controlling Wisconsin cases, the doctrine of *res judicata* did not apply to administrative agency proceedings. *See, e.g., City of Fond du Lac v. Department of Natural Resources,* 45 Wis. 2d 620, 625, 173 N.W.2d 605 (1970) ("It has long been established in this jurisdiction that the doctrine of res judicata has no application to the proceeding of an administrative agency such as the [DNR]."); *Board of Regents v. Wisconsin Personnel*

---

[3] In *Casteel v. Vaade,* 167 Wis. 2d 1, 5, 17, 481 N.W.2d 277 (1991), this court expressly held that section 1983 plaintiffs are not required to exhaust state administrative remedies as a perquisite to section 1983 actions brought in state court. The court withdrew the language in the *Kramer* case concluding that state courts may require exhaustion of administrative remedies to bring a section 1983 action in state court.

571

*Commission,* 103 Wis. 2d 545, 552, 309 N.W.2d 366 (Ct. App. 1981) ("Wisconsin rejects the application of the doctrine of res judicata to the proceedings of an administrative agency."). The plaintiff reasonably believed that she had nothing to lose by taking the cautious route and exhausting her administrative remedies.

Even when the plaintiff received her final probable cause determination from the Personnel Commission in 1985, that determination had no preclusive effect in state or federal courts. Only if she had pursued judicial review of that administrative determination, as the majority implies she should have done, would her section 1983 claim have been foreclosed. *Kremer v. Chemical Construction Corporation,* 456 U.S. 461 (1982) (federal courts must apply state doctrine of issue preclusion to state court judicial review of a state administrative agency's action). Thus the plaintiff's decision to forego judicial review of the Personnel Commission's determination was also reasonable, based on then-existing law.

Indeed, it was not until 1986 that the potential preclusive effect of unreviewed state agency determinations became a factor in the strategic calculus of a would-be section 1983 plaintiff. *See University of Tennessee v. Elliott,* 478 U.S. 788 (1986). *Elliott* requires federal courts to apply to section 1983 claims the preclusive effect that state agency determinations would be accorded by the state's courts.

Regardless of the merits of the administrative agency issue preclusion rule established today, the majority opinion unfairly applies that rule to the plaintiff in the case at bar. Only under the majority's new interpretations do our cases hint that the plaintiff was not required to exhaust her administrative remedies or that she should have anticipated that unreviewed

agency determinations would be accorded preclusive effect in a subsequent section 1983 action. The plaintiff's reading of the law was reasonable. To bar her section 1983 claim on the basis of an administrative agency determination she reasonably believed she had to pursue is patently unfair. The rule this court adopts today could be fairly applied only to a plaintiff who, faced with a clear choice between pursuing administrative remedies and going to court, chose to take the administrative route.

Thus, the majority opinion fails the three-part *Chevron* test for retroactive application of a new rule of law. Under the *Chevron* test, a rule of law should not be applied retroactively when it is new, when its retroactive operation would retard its purpose, and when retroactive application would create inequitable results. *See Chevron Oil v. Huson,* 404 U.S. 97, 106–108 (1971). In this case, the administrative agency issue preclusion rule is new. Applying the new issue preclusion rule to the plaintiff retroactively defeats the underlying purpose of section 1983: to provide an opportunity for citizens to vindicate in court constitutional rights allegedly violated by state actors. Finally, retroactive application of this rule to the plaintiff is inequitable. No matter how adequate her administrative remedies they do not replace the day in court to which she was entitled.

Apart from the unfairness to the plaintiff, I am concerned that the majority opinion has far-reaching implications which the court has not explored. Although it seems to foster finality and a single proceeding, today's holding forces complainants to choose between administrative and judicial remedies. To the extent that they choose a judicial remedy rather than a simpler and less expensive administrative mechanism

573

for dispute resolution, the costs to the system as a whole will be unnecessarily increased. Furthermore, the holding may produce incongruous results in Title VII and section 1983 claims. *See* Marjorie A. Silver, *In Lieu of Preclusion: Reconciling Administrative Decisionmaking and Federal Civil Rights Claims,* 65 Ind. L.J. 367, 391–94 (1990).

Like Judge Sundby, I conclude that for reasons of fairness, justice and public policy, the plaintiff should be allowed to maintain her civil rights action. For the reasons set forth, I dissent.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and Justice WILLIAM A. BABLITCH join this opinion.